# Hall & Long *v.* Jones.

### *Action against Retired Partner, on Partnership Debt.*

1. *Dissolution of partnership; liability of retired partner.*—When a partnership is dissolved by the retirement of one of the partners, and is succeeded in business by a new partnership, composed partly of the remaining partners, the retiring partner is not discharged from liability for the debts of the old partnership, in the absence of an agreement, express or implied, with the creditors; and neither the failure of a creditor to demand payment of him, for a period of time less than that prescribed as a bar by the statute of limitations, nor a demand of payment from the new firm, nor the receipt of interest, or even a partial payment of his debt, from the new firm, nor all these facts combined, necessarily establish such agreement; though they are proper evidence to be submitted to the jury, under appropriate instructions from the court, as relevant to the question whether such agreement in fact existed.

2. *Same; burden of proof.*—In an action against the retiring partner, by a creditor of the old partnership, the *onus* is on the defendant to prove his discharge, either by express agreement, or by facts from which an agreement will be implied.

3. *Same; notice of change in partnership.*—The practice of the old firm "to make monthly reports or returns to persons consigning goods to them," does not legitimately tend to show notice to the plaintiff, a creditor of the old firm, of the changes in the partnership ; but business letters, written to him by the new firm, are admissible evidence for that purpose.

4. *Same; recognition of new partnership by creditor.*—If the plaintiff, having

[Hall & Long v. Jones.]

consigned goods for sale to the old partnership, is notified that a portion of his goods has been turned over to the new firm, and instructs them to sell the goods and remit the proceeds; this fact, unexplained, absolves the old firm from liability for this portion of the goods, but not for the residue.

APPEAL from the City Court of Montgomery.
Tried before the Hon. JOHN D. CUNNINGHAM.

This action was brought by the appellants, suing as partners, against W. B. Jones, as a member of the late firm of Hannon, Brown & Jones; and was commenced on the 18th June, 1870. The complaint contained only the common count for goods sold and delivered by plaintiffs to said Hannon, Brown & Jones during the year 1868, and the common count for money paid by plaintiffs for said Hannon, Brown & Jones during said year, 1868. The defendant pleaded " the general issue, in short by consent, with leave to give in evidence any matter that might be specially pleaded; and issue was joined thereon, with like leave in reply." The plaintiffs were merchants, doing business in Louisville, Kentucky; and in October and November, 1868, they shipped to said Hannon, Brown & Jones, who were doing business in Montgomery, Alabama, goods on consignment, consisting of bagging, flour, hams, &c., the aggregate amounting to $871.19. On this account a partial payment of $300 was made in 1868, but at what particular time was not shown; and this action was brought to recover the balance, $571.19, with interest.

On the trial, as the bill of exceptions shows, the plaintiffs offered in evidence a statement of their account against Hannon, Brown & Jones, which was admitted to be correct; and it was admitted, also, that the defendant was a member of said firm when the goods were received. The defendant then testified, as a witness for himself, as follows: "The firm of Hannon, Brown & Jones was composed of M. W. Hannon, A. M. Brown, and defendant. Defendant retired from said partnership on the 12th December, 1868, and made a verbal agreement with the firm of Hannon, Brown & Co., who succeeded them in business, and which was composed of said M. W. Hannon, A. M. Brown, and F. M. Blount, that the latter firm should retain all the assets, and assume and pay all the debts and liabilities of said Hannon, Brown & Jones. Defendant was not called upon for the payment of the account now sued on, until eighteen months after his retirement; and nothing was said to him on the subject during that time, by letter or otherwise; and during the whole of that time he was engaged in business in the city of Montgomery, and was solvent; and when called on, it was by plaintiffs' attorney; and that no letter addressed to Hannon, Brown & Jones, if any such was written or received,

ever came to his hands; and that he had no knowledge that any were or were not received, addressed to them, and did not know anything as to demand made on the other partners. The plaintiffs objected to the admission of the statement, that the defendant was not called on for the payment of the account until eighteen months after his retirement; but their objection was overruled, and the evidence admitted; to which they excepted. The said witness was asked, by his own counsel, whether the said firm of Hannon, Brown & Co. failed just before the time when he was called on to pay said account; to which he answered, that he could not swear that they were insolvent at that time, but that he knew that the door of their business house was closed, and they had ceased to do business just previous to that time. To this question and answer, each, the plaintiffs objected; their objection was overruled, and they excepted. The defendant then proposed to prove, that no claim was made on him for the payment of said account, until after the said firm of Hannon, Brown & Co. had closed doors and ceased to do business; to which evidence the plaintiffs objected; but their objection was overruled, and they excepted; and the defendant so testified.

"The defendant testified, also, that the practice of Hannon, Brown & Jones was to make monthly reports, or returns, to persons consigning goods to them for sale. The plaintiffs objected to this evidence; but their objection was overruled, and the evidence admitted; to which they excepted. The defendant further testified, that Hannon, Brown & Co. continued in the same business some time (he could not say how long), and were succeeded in the business by Brown, Blount & Co., who were succeeded by B. F. Blount & Co., who finally closed doors, and ceased to do business, in April, or May, 1870; that he did not know who composed the two last named firms, but the same parties were about the house, and appeared to have charge of the business. He testified, also, that the bagging mentioned in plaintiffs' account was turned over by Hannon, Brown & Jones, at the time of his retiring as aforesaid, to Hannon, Brown & Co."; and he afterwards offered in evidence a letter addressed by plaintiffs to Hannon, Brown & Co., dated October 16, 1869, containing these words: "You will please sell all the bagging you may have in your hands unsold, at once, and render account of sales. Give us account-current of all business, as we wish to close up our year's business, and this is necessary." The plaintiffs objected to the introduction of this letter, "on the ground of its irrelevancy," and reserved an exception to the overruling of their objection. The defendant testified, also, "that when plaintiffs' attorney called on him for payment of said account,

he, with said attorney, called on said Blount for payment of it, and said Blount repeatedly promised to pay the same;" also, that plaintiffs had an agent, named Camp, who some- times visited Montgomery; and he read in evidence, without objection, a letter written to plaintiffs by said Hannon, Brown & Co., dated the 7th January, 1869, in which the writers spoke of the condition of the flour market, mentioned a sale of flour on consignment, of which an account of sales had been forwarded, and referred to an interview with said Camp.

"The foregoing was all the evidence in the case; and the court thereupon charged the jury, on the request of the de- fendant, as follows: 1. 'If the jury believe that Hannon, Brown & Jones had goods in their possession, consigned to them for sale by plaintiffs; and that the same goods were turned over to another firm, as the goods of the plaintiffs; and that the plaintiffs made no objection, but, on the con- trary, requested and authorized said firm to whom the goods had been turned over, by letter or otherwise, to sell the same, and remit the proceeds; then the firm of Hannon, Brown & Jones are not liable for the value of such goods as were turned over, and plaintiffs can not recover for them in this action.' To this charge the plaintiffs excepted.

"2. 'That if the jury shall find that the defendant retired from the firm of Hannon, Brown & Jones on or about the 12th day of December, 1868, under an agreement between him and the remaining partners, that he should be released from all the debts of the said firm, and that said debts should be assumed by the new firm, composed of said remaining partners and F. M. Blount; and that this agreement was assented to by the plaintiffs, either expressly, or by implica- tion; they must find for the defendant.' To this charge, also, the plaintiffs excepted.

"The court charged the jury, also, that they may look to all the circumstances of the case, to ascertain whether plain- tiffs assented to said agreement; to which charge, also, the plaintiff excepted. The court further charged the jury, on the request of the plaintiffs, that they must not find for the defendant, upon the first of the charges above given, unless it was supported by the evidence."

The several rulings of the court on the evidence, and the charges given, to which exceptions were reserved, as above stated, are now assigned as error.

HERBERT & MURPHEY, for appellants, cited *Payne v. Slate & Gardner*, 39 Barbour, 634; *Blew v. Wyatt*, 5 Car. & Payne, 397; *Gough v. Davies*, 4 Price, 200; *Harris & Donaldson v.*

[Hall & Long v. Jones.]

*Lindsay*, 4 Wash. C. C. 271; *Heberton v. Jepherson*, 10 Barr, 124; *Offut v. Scott*, 47 Ala. 104; Parsons on Partnership, 425-6, notes.

ARRINGTON & GRAHAM, *contra*, cited Story on Partnership, § 156; Parsons on Partnership, 421, 423-6, and note, 435-6.

STONE, J.—When goods were consigned by Hall & Long to Hannon, Brown & Jones, and received by them as commission merchants, this constituted a contract, binding on each of the partners composing the latter firm, to account for the goods, or their proceeds.   Such liability could not be cancelled by any act of the latter firm alone, or by any agreement its different members might make among themselves, in which Hall & Long did not concur.   It requires the same mutuality to vary or modify a contract, as it does to create it in the first instance; for modification is only a species of contract.   The mutual agreement of the parties, a promise for a promise, is sufficient to uphold such modified contract, without other new consideration.—*Thomason v. Dill*, 30 Ala. 455-6, and authorities cited.

Failure to demand payment of Mr. Jones, unless for a sufficient length of time to create a bar by limitation, did not, *per se*, cancel his liability.   Neither would the demand of payment from the succeeding firm, or even the receipt of interest or part payment, or all these combined, necessarily lead to such result.   The true inquiry is, was there an agreement to discharge the older partnership, and to substitute the new one as the debtor.   Unless this be shown, the liability of the older firm remains.

Speaking on this question, Mr. Parsons, in his work on Partnership, page 425, says : "Frequently, the new firm goes on in its regular business; the accounts of the customers are transferred from the old to the new; and the customers, knowing the retirement and change of parties and transfer of accounts, say nothing, but continue their dealings with the new firm; perhaps depositing and drawing, or buying and selling, or receiving interest and settling accounts, all just as before, taking no particular notice of the change. The question then occurs, what is the legal significance and effect of such conduct; and it seems to be well settled, that the mere receiving of interest from the new firm will not discharge the old; and although the transferring the old account to the new firm is not necessarily an adoption by the creditor of the new firm, as his sole debtors, yet this fact, together with the other circumstances of the case, may be evidence from which a jury would be authorized to find that

[Hall & Long v. Jones.]

the creditor had impliedly assented to a discharge of the old firm." He adds, "that when the liability at a given time of all the partners is proved, the burden is on those of them who seek to. escape continued liability, to show a cessation."

In the case of *Gough v. Davies*, 4 Price, 200, Gough had deposited with a banking firm a sum of money, to be repaid by the bankers, and interest to be paid on the deposit. The partnership was changed by the retirement of Davies, and by the addition of two new members. Gough knew of the change. He subsequently made other deposits, on the same terms, with the new firm ; and received interest on the entire deposit from the new firm. He continued thus to deal with the new firm for four years, giving no notice of intention to hold the old firm liable for the deposit made during its existence. The new firm then became bankrupt; and the question was, whether Davies, the retired member of the old firm, was liable for the deposit made while he was a member. Baron Graham said : "There is no evidence to show that Mr. Gough adopted the new firm. What more has he done, than to say, I am perfectly willing to take your security for the new debt, but I don't release the old firm." Baron Wood said: "There is not any evidence that the plaintiff agreed to release the old, and receive the new firm as his debtors. The only evidence is, that the new firm paid interest upon both debts ; one of the new having been a partner in the old firm." Baron Garrow said : "I can not agree that there was no evidence to be left to the jury; I think there was important evidence to be left to the jury, and that the judge [Parke] was so far right."

The case of *Blew v. Wyatt*, 5 Car. & Payne, 397, was a very strong case. Blew had lent money to a firm, for which they agreed in writing to pay him five per cent. interest. Various changes took place in the house, in the course of which one of the partners who signed the agreement retired from it. The interest was paid, from time to time, by the different firms, until the last firm became bankrupt. Blew served all the different firms as clerk, and had knowledge of the different changes. The question was, whether Wyatt, who had retired, was still liable. Lord Lyndhurst, C. B., delivering his opinion, said : "I am of opinion, that the instrument is still binding upon both defendants, unless an agreement was made between the parties, by which the plaintiff agreed to discharge the first firm, and substitute others. I think that the mere knowledge of the changes will not be sufficient; there must be some agreement shown between the parties." See, also, the following cases, strongly in point : *Harris v. Lindsay*, 4 Wash. Cir. Ct. 271; *Heberton v. Jepherson*, 10 Penn.

State, 124; *Payne v. State,* 39 Barbour, 634; *Offutt v. Scott,*
47 Ala. 104.

It is not necessary, nor do we feel inclined, to adopt some
of the extreme views advanced above. Still we hold, that to
discharge a retiring partner, from a liability once incurred,
the facts and circumstances must satisfy the jury that the
plaintiff agreed to release the old, and look to the new firm.
Proof, if made, that the accounts against the old firm were
re-stated against the new, would be strong evidence from
which an agreement might be inferred; but it is not for us
to declare what will be sufficient evidence to satisfy the
minds of the jurors. We agree with Baron Garrow, that
whenever there is any evidence, from which such agreement
could be inferred, then the question of agreement *vel non*
should be submitted to the jury, in a charge appropriate to
the testimony in the cause.

Applying the principles stated above to the case made by
the present record, we think the City Court erred, in per-
mitting the defendant to prove that no demand for the goods
or money was made on him for eighteen months after he re-
tired from the firm. The fact was immaterial. Neither was
the fact that Hannon, Brown & Co. had closed doors, or
ceased to do business, material. We hold, also, that " the
practice of Hannon, Brown & Jones to make monthly re-
ports or returns to persons consigning goods to them," does
not legitimately tend to show that Hannon, Brown & Co., or
Brown, Blount & Co., or B. F. Blount & Co., notified plain-
tiffs of the changes in the firm. The question presented by
this testimony, even if it related to the practice of Hannon,
Brown & Co., Brown, Blount & Co., or B. F. Blount & Co.,
is very different from that considered and decided in the
case of *Wright v. Bolling,* 27 Ala. 264. That was simply a
case of aiding recollection, by a memorandum made by the
witness, and known by him to be correct. This is an attempt
to prove the existence of a particular fact, by proof of the
habit of the house. There was no error in receiving the let-
ters in evidence.

The first charge to the jury was rightly given. If, after
Hall & Long were notified that the goods, or a part of them,
were turned over to Brown, Blount & Co., they instructed
them to sell the goods and remit the proceeds, this was such
a taking of direction and control as, unexplained, would ab-
solve the original consignees from further liability for goods
thus turned over. It could not extend to goods not turned
over. The second and third charges should not have been
given. They ignore the material inquiry of agreement by

[Enloe v. Reike et al.]

plaintiffs to release the old firm, and to accept the new one in its stead.

Reversed and remanded.