## U. S. CIRCUIT COURT.

SAMUEL REGESTER, administrator, agt. HARRY E. DODGE, executor.

*Partnership — Liability of a member of an old firm for a debt contracted with such firm, where the same has been dissolved and a new firm formed, who assumes all liabilities of the old firm, and agrees that liability of retiring members shall be terminated — Facts which are sufficient to warrant the conclusion that the liability of the new firm was accepted by the creditors.*

When the dissolution of an old firm has occurred, and a new firm has agreed to assume the liabilities of the old firm, but slight circumstances are required to justify finding an intention on the part of a creditor of the old firm, who has notice of the dissolution and of the agreement by the new firm, to accept the liability of the new firm in place of the liability of the old.

At the time of the deposits for which this action was brought, the banking firm of J. C. & Co. was composed of several persons, among whom were J. W. S. and E. D. This firm dissolved January 1, 1871. J. W. S. and E. D. then retired from the business, and a new firm was formed, consisting of the remaining members of the old firm and two new members. The new firm succeeded to the business of the old firm, the account with the retiring members was made up and settled, and the new firm then assumed all the obligations of the old firm, and agreed that the liability of the retiring members should be terminated. The new firm continued business until November, 1873, when it was adjudged a bankrupt. Among the debts of the new firm, published in the bankruptcy proceedings, was the debt here sued on, which debt was, without objection, proved as a debt of the new firm, in the bankruptcy proceeding of that firm, by the representative of D. R. Upon this debt so proved, dividends were, from time to time, declared out of the assets of the new firm, and the same received by the representative of D. R. In 1879, the estate of the new firm was wound up under the direction of trustees, in accordance with the provisions of the bankrupt law, and the stocks then constituting the assets of the new firm were distributed among the creditors of that firm in pursuance of a scheme assented to by the creditors. E. D. died in 1877. During his lifetime no claim of liability for the deposits was made upon him. In September, 1878, and prior to the distribution of the stocks, payment of this debt was demanded by the representative of D. R., of the executor of E. D., who then denied the existence of the debt as a liability of E. D. Thereafter the representative of D. R. participated in the distribution of the

stocks belonging to the new firm, and, as a creditor of that firm, received sundry shares of various stocks, which he forthwith sold at private sale, without notice to the executor of E. D. The amount of the cash dividends received from the estate of the new firm, together with the amount realized from the sale of the stocks distributed by the direction of the trustees of that firm, not being equal to the amount of the deposits made in 1869 by D. R., this action is brought by his representative to charge the estate of E. D. with the deficiency:

*Held*, that by the deposit made in 1869 with the old firm J. C. & Co., E. D., then a member of that firm, became liable for the amount thereof. That liability continues, unless facts be shown from which an intention on the part of the creditor to accept the liability of the new firm in lieu of the liability of the old firm can be fairly inferred.

*Held*, further, that the circumstances in this case tends to show assent by the plaintiff to the novation of the debt sued on.

The adoption of the new firm as the debtors, coupled with the omission, during the lifetime of the retired partner, to indicate, by word or deed, the existence of a liability on his part for the debt in question, and coupled with the lapse of time that occurred before the liability of the retired partner's estate was asserted, is sufficient to justify the inference that the new firm was adopted as debtor, with the intention that the liability of the firm was to stand in place of the liability of the old:

*Held*, also, that having, without cause, delayed asserting the liability of the outgoing partners during a period of some five years, whereby the party was deprived of an opportunity to take part in the bankruptcy proceedings of the new firm, and to reimburse himself from the estate of that firm the plaintiff cannot now ask a court of equity to exercise its power in his behalf. The right here claimed is an equitable right only, and it may, therefore, be met by equitable circumstances.

*Eastern District of New York, February,* 1881.

THE facts are sufficiently stated in the opinion.

*Henry S. Bennett,* for defendant.

I. The letters of administration issued to the complainant are void, because there was no ground for issuing the process. Attached to these letters is the evidence upon which the surrogate acted in issuing them. That evidence is totally defective. The rule of law upon this point appears in the case of *Staples* agt. *Fairchild* (3 *N. Y. R.,* 41–46); *Roderigas* agt. *East River Savings Institution* (63 *N. Y. R.,* 464; *affirming* 43 *Superior Court,* 217).

II. The foundation of the plaintiff's claim is the two certificates. But at the time that Mr. Dodge was a member of this firm these two certificates had been returned to, or were in possession of that firm. When Mr. Dodge retired from that firm he left them in possession of the new firm, with whom they remained for five years. The presumption of law is, that these certificates were paid. So far from proving a debt against that firm, the fact of their being in the possession of the firm who issued them proves the extinguishment of the claim. The only evidence in the case that rebuts that presumption is the testimony of the complainant of the declarations or admissions of Jay Cooke, made five years after the retirement of Dodge from the firm. This evidence is inadmissible, we claim, as against Mr. Dodge ( *Wharton's Law of Evidence*, *vol.* 2, *sec.* 1196). "After dissolution of the partnership, the power to bind by admission ceases." Particularly is this so when the effect of such a declaration by one partner is to throw the indebtedness on the other ( *Very* agt. *Watkins*, 23 *How.* [ *U. S.*], *Rep.*, 469). To the same effect is the *Bank of Vergennes* agt. *Cameron*. In that case judge HARRIS (*on page* 149 *of* 7 *Barbour S. C. R.*) says: "The admission of Baker cannot be allowed as against Cameron, for it was subsequently proved that the partnership between Baker and Cameron had been dissolved before such admission was made." Also in *Walden* agt. *Sherburne* (15 *Johns. R.*, 424) judge SPENCER says: "One partner cannot, after a dissolution, bind his co-partner by acknowledging an account, any more than he can give a promissory note to bind him." To the same effect is *Hackley* agt. *Patrick* (3 *Johns.*, 536); *Baker* agt. *Stackpoole* (9 *Cow.*, 419); *Van Keuren* agt. *Parmelee* (2 *N. Y. R.*, 523; *overruling Patterson* agt. *Choate*, 7 *Wend.*, 441), and *Johnson* agt. *Beardsley* (15 *Johns.*, 3).

III. The complainant obtained possession of these certificates without the knowledge or consent of Mr. Dodge, but solely through the act and authority of one Edwin M. Lewis, the trustee in bankruptcy of a firm with whom Mr. Dodge

Regester agt. Dodge.

had had no connection for five years (*Arnold* agt. *Camp*, 12 *Johns.*, 409). This trustee undertook and assumed to adjudicate upon the rights of Mr. Dodge, upon evidence which he thought sufficient, without notifying Mr. Dodge, or giving Mr. Dodge any opportunity to be heard. Had not Mr. Lewis exercised this power of delivery, the complainant would have had no standing in court as against Mr. Dodge. Whether he exercised that power rightly this court has no means of determining, except the reported opinion of Mr. Jay Cooke, whom the complainant has not thought proper to examine.

IV. The complainant, by proving his claim against the new firm, including Messrs. Garland and Jay Cooke, Jr., who were not members of the old firm, must be deemed in law to have acquiesced in the arrangement made in 1871, under which the new firm assumed all the liabilities of the old firm, and released Messrs. Dodge and Sexton therefrom. If he had intended to hold Messrs. Dodge and Sexton he should have proved his claim against those members of the firm only who were members when the certificates were issued. The form of his proof, his acceptance of the dividends no less than his omission to call upon Mr. Dodge during his lifetime, create the presumption and constitute proof of his election to hold his successors liable for the debt. No such assent was directly given, but the circumstances that imply such assent are set forth in the following cases. The courts construe with considerable liberality the question of assent (*Hart* agt. *Alexander*, 2 *M. & W.*, 484; *Harris* agt. *Lindsay*, 4 *Wash. C. C.*, 98–271; *Deland* agt. *Amesbury Co.*, 7 *Pick.*, 241; *Benson* agt. *Hadfield*, 4 *Hare*, 32).

V. The complainant cannot maintain this action because he has not exhausted his remedy against John W. Sexton, nor has he made him a party defendant to this action, nor has he proved his insolvency. On the contrary, it affirmatively appears that ever since the dissolution he has been a banker doing business in Philadelphia.

VI. The settlement which the complainant made with the

legal representatives of the firm without notice to, or knowledge of Mr. Dodge or his legal representatives, bars his recovery in this action. His duty was to notify Mr. Dodge, before he compromised with that firm. If Mr. Dodge is liable for this claim, his liability was that of surety (*Calvo* agt. *Davies*, 73 *N. Y.*, 216).

VII. The complainants sale of the stocks, which he accepted from the firm in payment of the claim, without notice to Mr. Dodge of the time and place of that sale, or without giving Mr. Dodge an opportunity to exercise the privilege of buying the stock, clearly bars his recovery. He sold those stocks at private sale, and because his sisters were clamoring for money. If his present claim be well founded, Mr. Dodge had an interest in those stocks, and the right to reasonable notice of when and where they were to be sold. The evidence shows, that if he had retained those stocks a few months longer, the proceeds of the sale would have more than met the claim. The complainant had, therefore, no right to sacrifice or peril the rights of Mr. Dodge by a sale without notice to him.

VIII. If the declarations of Mr. Cooke bind this defendant, then the fact appears that David Regester, in January, 1869, forced upon the firm a bailment. In other words, Jay Cooke & Co. became, against their will and protest, bailees of certain property belonging to Mr. Regester. The latter's hasty and continued disappearance rendered the firm powerless to take any such steps as the law imposes upon them to be relieved from liability. This firm remained as such involuntary bailees for nine years, and the defendant, Dodge, was forced to maintain that relation for eight years, until the period of his death. Under this state of facts, it is respectfully submitted this claim, as against Edward Dodge, is barred by the statute of limitations. Although when the certificates were first given to Regester, no right of action existed until he demanded the money and returned the certificates, yet this legal condition was changed when he threw the certificates on

---

Regester agt. Dodge.

---

the counter, without affording Cooke & Co. an opportunity to reject or accept them, for by this action Regester could not force upon Cooke & Co. the character of bailee for custody, and their charge of them was that of those coming to the possession of abandoned property. At any time a mere suit by Regester for their recovery would have been sufficient demand, just as a suit is itself a sufficient request for money payable to the suitor on demand. The statute began to run against him and his representatives from the time the certificates were thrown on the counter (more than six years ago), and the right asserted on behalf of Regester is barred.

IX. This act of Regester in returning the certificate to Jay Cooke & Co., and suddenly disappearing, destroyed his right to claim interest from that date. The firm became liable for the principal only. The contract created by the issue of those certificates was terminable at the pleasure of either party. Regester could not compel them to pay interest forever, by refusing to withdraw his deposit. His act of returning them, and of keeping out of their reach, must be construed as a termination of the contract, and henceforth they sustained to him only the relation of bailee without hire.

X. The bill should be dismissed and judgment should be directed to be entered in favor of the defendant.

BENEDICT, J. — In this case I have listened to a reargument, and have re-examined the question upon which, as I suppose, the case turns, and my opinion remains unchanged that the plaintiff is not entitled to recover. The earnestness of the contention made in behalf of the plaintiff, has impelled me to state at length the reasons of my conclusion.

The action is a suit in equity, brought by the administrator of David Regester, who disappeared in the year 1870, and is supposed to be dead, against Harry E. Dodge, executor of Edward Dodge, for the purpose of charging the estate of Edward Dodge with the amount of certain deposits of money made by David Regester in the year 1869, with the firm of

Jay Cooke & Co., of Philadelphia, of which firm Edward Dodge was then a member.

The material facts are as follows:

At the time of the deposits in question, the banking firm of Jay Cooke & Co., of Philadelphia, was composed of William G. Morehead, Henry D. Cooke, Pitt Cooke, George C. Thomas, Harry C. Fahnestock, John W. Sexton and Edward Dodge. This firm dissolved January 1, 1871. John W. Sexton and Edward Dodge then retired from the business, and a new firm was formed, consisting of the remaining members of the old firm and two new members, Jay Cooke, Jr., and James A. Carhart. The new firm succeeded to the business of the old firm, the account with the retiring members was made up and settled, and the new firm then assumed all the obligations of the old firm, and agreed that the liability of the retiring members therefor should be terminated.

The new firm continued business until November 26, 1873, when it was adjudged bankrupt. Among the debts of the firm, published in the bankruptcy proceeding of that firm, was the debt here sued on. In June, 1873, this debt was, without objection, proved as a debt of the new firm, in the bankruptcy proceedings of that firm, by the representative of David Regester.

Upon this debt, so proved, dividends were from time to time declared out of the assets of the new firm of Jay Cooke & Co., and the same received by the representative of David Regester. In the year 1879 the estate of the new firm was wound up under the direction of trustees, in accordance with the provisions of the bankrupt law, and the stocks then constituting the assets of the new firm were distributed among the creditors of that firm, in pursuance of a scheme assented to by the creditors.

Edward Dodge died in 1877. During his lifetime no claim of liability for the deposits in question was made upon him in any form, so far as appears. In September, 1878, and prior to the distribution of the stocks by the trustees of the

Regester agt. Dodge.

new firm, payment of this debt was demanded by the representatives of David Regester of the executor of Edward Dodge, who then denied the existence of the debt as a liability of Edward Dodge. Thereafter the representative of David Regester participated in the distribution of the stocks belonging to the new firm of Jay Cooke & Co., made by the trustees thereof, and as a creditor of that firm received sundry shares of various stocks, which he forthwith, and on June 12, 1879, sold at private sale, without notice to the executor of Edward Dodge. The amount of the cash dividends received from the estate of the new firm, together with the amount realized from the sale of the stocks distributed by direction of the trustees of that firm, not being equal to the amount of the deposits made in 1869 by David Regester, this action is brought by his representative to charge the estate of Edward Dodge with the deficiency.

The law of the case is not doubtful. By the deposits made in 1869 with the old firm of Jay Cooke & Co., Edward Dodge, then a member of that firm, became liable for the amount thereof. That liability continues, unless facts be shown from which an intention on the part of the creditor to accept the liability of the new firm in lieu of the liability of the old firm can be fairly inferred. The question, therefore, is, whether the facts above stated are sufficient to warrant the conclusion that the liability of the new firm was so accepted by the plaintiff.

In disposing of questions of this character, courts have frequently held, that when the dissolution of an old firm has occurred, and a new firm has agreed to assume the liabilities of the old firm, but slight circumstances are required to justify finding an intention on the part of a creditor of the old firm, who has notice of the dissolution and of the agreement by the new firm, to accept the liability of the new firm in place of the liability of the old. In *Ex parte Williams* (*Buck.*, 13), the court speaking of such a case say: " A very little will do." In *In re Smith, Knight & Co.* (*L. R.*, 4 *Ch.*

*App.*, 66), the lord justice says : · " There is no doubt whatever that if you have an old firm, and either a new partner is taken into it or a new firm constituted, and the assets are taken over by the new firm, and the customer knowing all these things, afterwards goes on and deals with the new firm, you infer assent on his part from slight circumstances." In *In re Family Endorsement Soc.* (*L. R.*, 5 *Ch. App.*, 118), speaking of a case very like the present, it was said : " Very slight evidence, indeed, would be required to establish that the creditor had taken the liability of the new firm instead of the old."

What then are the circumstances in this case tending to show assent by the plaintiff to the novation of the debt sued on ? In the first place it will be observed that from the time of the publication of this debt as a debt of the new firm of Jay Cooke & Co., the creditor — and the representative of David Regester was then the creditor, authorized to collect and to discharge the debt — knew that the old firm of Jay Cooke & Co., had dissolved; that Edward Dodge and John W. Sexton had retired from the business ; that a new firm had been formed, containing members who were not members of the old firm ; and that such new firm had agreed to assume all the liabilities of the old firm. The creditor is also chargeable with the knowledge that the purpose of this agreement made by the new firm was to relieve the outgoing parties from their liability for the debts of the old firm. The nature of the agreement itself discloses that to be its object.

This knowledge on the part of the creditor is not without significance in ascertaining his intention. If it had been the intention of the creditor to maintain intact the then existing liability of the retired partner, such an intention would naturally have evoked from the creditor, when he came to deal with the new firm, in respect to this debt, some positive expression of a purpose to avoid a substitution of the liability of the new firm in place of the liability of the old. The proofs here fail to show that any expression of such a purpose in any form escaped from this creditor.

The next circumstance deserving attention is the time which elapsed before any attempt was made to enforce the debt as a subsisting liability of Edward Dodge. The deposits sued on came to be known at the time of the bankruptcy of the new firm of Jay Cooke & Co., in 1873. Edward Dodge lived until 1877 without the suggestion of a continuing liability on his part for this debt from any source. There is no evidence that he was insolvent or absent; and the omission to make a claim upon him in his lifetime, the other members of the old firm being insolvent, is hardly consistent with the position now assumed, that there was no intention to accept the liability of the new firm in lieu of the old. Furthermore, no claim was made of the executor of Edward Dodge until September, 1878, when the estate of the new firm of Jay Cooke & Co. was substantially wound up, which seems to indicate that the making of the demand upon the executor of Edward Dodge had some connection with the result of the bankruptcy proceedings of the new firm, and gives rise to the suggestion that the intention to maintain a liability on the part of Edward Dodge was an afterthought.

In cases of this description, delay in asserting the liability of an outgoing partner, when coupled with a dealing with the new firm, has often been deemed to be a circumstance tending to show an intention to discharge liability of the old. In *In re Smith, Knight & Co.*, already cited, it is said: " The time which has elapsed may be more material."

The next circumstance deserving attention is of more significance. Indeed, it is one that in some of the cases has been considered to be of itself conclusive. This circumstance is that when the existence of these deposits was disclosed in the bankruptcy proceeding of the new firm, the creditor, knowing that he was dealing in respect to the assets of a new firm which had agreed to assume the debts of the old firm for the purpose of extinguishing the liability of the old firm, adopted the new firm as his debtors for this very debt. This he did in the most formal way by proving the deposit made

by David Regester with the old firm as a debt of the new firm. The proof was not of a liability by reason of property or money received by the new firm, to be applied to the discharge of debts of the old firm; but the original deposits were proved as a ground of liability. This adoption of the new firm as the debtors, coupled with the omission during the lifetime of the retired partner to indicate by word or deed the existence of a liability on his part for the debt in question, and coupled with the lapse of time that occurred before the liability of the retired partner's estate was asserted, appear to me to be sufficient, according to the requirements of the cases already cited, to justify the inference that the new firm was adopted as debtor, with the intention that the liability of the firm was to stand in place of the liability of the old.

In some of the adjudged cases less proof than is here presented has been considered sufficient to warrant a similar inference.

In *Hart* agt. *Alexander* (2 *Mee. & Wels.*, 489), FOLLETT, *arguendo*, says: "If the creditor by some positive act adopts a new firm as his debtor the retired partner is discharged." And lord ABINGER, in giving judgment, states as the result of the cases, that: "If a new partner comes in and an account is accepted in which the new partner is made liable for the balance, that discharges the old firm, as both cannot be held liable at once for the same debt."

In *In re Medical Invalid and General Life Assurance Soc.* [ (*Spencer's case*], 24 *L. T. R.*, 455), the circumstance that the new company and the customer had treated each other as insurer and insured, was held to be "complete evidence of novation."

In *In re Smith, Knight & Co.*, already cited, the case was made by the master of the rolls to turn upon the question whether the company had been adopted as debtor. He says: "I am of the opinion there was an adoption of the company as the debtor, and that it cannot be treated otherwise. It is useless to go into cases, because it is admitted that very small

things will do." The decision of the master of the rolls in that case was reversed by the court of appeals, upon the ground that the circumstance from which the master of the rolls found that there had been an adoption of the company as debtor was not sufficient to warrant that conclusion; but there was no dissent from the proposition of the master of the rolls that an adoption of the company as debtor by the creditor, with knowledge, was a fact decisive of the case.

In *Kerwin* agt. *Kerwin* (2 *Crompt. & Mee.*, 627), the opinions of LYNDHURST and BOLLAND proceed upon the assumption that the consent of the creditor to take the new firm as debtors would be conclusive. In *Brown* agt. *Gordon* (16 *Beavan*, 309), great stress is laid upon a fact, which appears in this case also, that the partners had settled with each other, treating the debt as a debt of the new firm.

The conclusion that a novation of the debt in question was affected, and the liability of Edward Dodge therefor extinguished, is not at variance with any of the cases upon which the plaintiff relies. In *Harris* agt. *Farwell* (15 *Beavan*, 31), the creditor proved against the new firm an original obligation of the new firm, based upon money paid the new firm to the use of the creditor. The case is made to turn upon the particular form of the proof of debt. In *Hall* agt. *Jones* (56 *Ala.*, 493), it is said : "Proof, if made, that the accounts against the old firm were restated against the new, would be strong evidence from which an agreement (to release the retired partner) might be inferred." In principle, that is this case. The debt due from the old firm of Jay Cooke & Co., was by the creditor restated against a new firm, and that for the purpose of sharing in the distribution of the estate of a firm known to be in nowise liable for the debt, except by reason of an agreement to assume it, made for the purpose of releasing their retired partner from liability.

In *Heath* agt. *Hall* (4 *Taunt.*, 352), the case put is that of proving the joint debt in the bankruptcy proceedings of one of two joint debtors, and suing the other debtor in an action

at law. This is not such a case. In *Devagnes* agt. *Noble* ([*Sleich's case*], *Merivale*, 562), the question decided was whether delaying for the space of eight months after the death of one partner, and meanwhile accepting part of the debt from the surviving partners, who were liable for the whole, was evidence of the transfer of the credit to the surviving partners.

In *Daniels* agt. *Cross* (3 *Ves. Jr.*, 277), the only act done, as stated by the court, was receiving interest from the surviving partners.

In *Harris* agt. *Lindsay* (4 *Wash. C. C.*, 100), the liability of the outgoing partner was clearly shown to have been extinguished, and so the court decided. It is there said (*page* 273) that no delay to pursue the outgoing partner which falls short of an agreement, express or implied, to take the paying partner as a debtor, will discharge the retiring partner; and the decisive question is stated to be whether the plaintiff had conformed to the agreement made between the parties at the dissolution; and the decisive fact considered to be that the paying partner was to be credited with the notes when paid. In the present case we have an express adoption of a new and different firm as the debtors, and a credit to that firm of part payment of the debt.

It is not seen that any difference arises from the circumstance that the acquiescence in the arrangement made between the old firm and the new for a transfer of the liability of the old debts to the new firm occurred after the new firm had become bankrupt, and not before. No inference is created by that delay, because David Regester, the depositor, disappeared before the new firm was formed, and the existence of the deposits was not known until the bankruptcy. The representative of David Regester, upon learning of the debt and of the agreement by the new firm to assume it, had the right to take the benefit of that agreement, and to accept the new firm as debtors in place of the old firm. The acts and omissions under consideration were, in law and in fact, those of the creditor, and so they have been treated here.

I now proceed to consider this case in another aspect, which, as it seems to me, is also fatal to the plaintiff's claim.

The suit is in equity. The plaintiff applies for equitable relief, but his claim is inequitable. This plainly appears. In 1873, when the new firm of Jay Cooke & Co. went into bankruptcy, and the plaintiff was called on to act in respect to the debt sued on, it was open to him at once to assert the liability of Edward Dodge for the debt in question. Had he then done so, and had the liability of Edward Dodge been then established, a right on the part of Edward Dodge to become a creditor of the new firm in the bankruptcy proceedings would have arisen. This was a substantial right lost to Edward Dodge by unexcused delay on the part of the plaintiff. Still more, if, instead of dealing with this debt as an existing liability of the new firm alone, the liability of Edward Dodge had been asserted and maintained before the estate of Jay Cooke & Co. was wound up, those shares of stock which the plaintiff received for this debt would have passed to Edward Dodge or his representative, with, of course, the election to sell or to hold them. It is obvious that the distribution of those stocks was not made for the purpose of enabling the creditors to turn them at once into money. That could have been done by the assignee in bankruptcy. The object of the distribution was to give the creditors an election to sell or to hold these stocks. This, too, was a substantial benefit. Its value in this case appears by the fact that the stocks distributed to the plaintiff, as creditor of the new firm, are now equal in value to the debt proved against the new firm by the plaintiff. The plaintiff has seen fit, without any cause assigned, to adopt a course by which the right to vote as a creditor in the bankruptcy proceeding was lost to Edward Dodge, and his representative deprived of the power to secure his estate against loss.

Having, without cause, delayed asserting the liability of the outgoing partners during a period of some five years, whereby the party was deprived of an opportunity to take part in the

Regester agt. Dodge.

bankruptcy proceeding of Jay Cooke & Co., and to reimburse himself from the estate of that firm, the plaintiff cannot now ask a court of equity to exercise its power in his behalf. The right here claimed is an equitable right only, and it may therefore be met by equitable circumstances (*Ex parte Kendall*, 17 *Ves.*, 522).

I have not overlooked the fact that the defendant did at one time make demand on the representative of Edward Dodge for the payment of the debt now sued on. But this demand was not made until 1878, when the distribution of the estate of Jay Cooke & Co. had been determined upon, and when made it was not enforced; on the contrary, the defendant's denial of liability was apparently acceded to, for the plaintiff commenced no suit at that time, and after that time received the stocks distributed by the trustees of Jay Cooke & Co., and sold them at private sale without notice. ·

Attention should also be called to the fact that the plaintiff makes no tender of the stocks he so received. He who asks equity must do equity. If at this late day the estate of Edward Dodge is to be charged with the debt in question equity demands of the plaintiff that he transfer to the estate of Edward Dodge the stocks which Edward Dodge would have been entitled to receive if his liability had been asserted in his lifetime. The plaintiff does not do this. All that he offers is to credit the amount of the cash dividends and the proceeds of the private sale of those stocks. Manifestly, in view of the evidence respecting the value of those stocks, it would not be for his advantage to make tender of them now. But only in that way can he do equity. Failing to do this, his prayer cannot be granted.

Let an order be entered dismissing the bill, with costs.