## THE UNITED STATES *against* SIMPSON

A loss from indulgence by a creditor to a principal, which is purely permissive, will not discharge a surety.    If the creditor has disabled himself to proceed, the surety is *ipso facto* discharged: if he has not, no eventual loss from mere delay, will produce that effect.

Hand-writing may be proved by one who has become familiar with it in a long correspondence with the writer, although he may never have seen him write.

ERROR to *Huntingdon* county.

In *1819* the *United States* obtained a judgment against *John Patton* and *William Simpson* his surety:—in 1822 a *fi. fa.* was issued upon it, which was not given to the sheriff, by order of the plaintiff's attorney: there was no further proceeding until 1826, when a *scire facias* was issued against both defendants, for whom there was an appearance and plea of payment.    Subsequently, in the same year, *Patton* confessed judgment; and issue was joined on the plea of payment, with *Simpson.*    Upon the trial of this issue, the defendant gave in evidence the record of several judgments that had been obtained against *Patton*, between the time of the rendition of the judgment of the *United States*, and its revival in 1826; and which became thereby a lien upon his real estate, to the exclusion of the *United States'* judgment.    There were also given in evidence the following letters of *S. Plesenton*, "Fifth Auditor and acting Commissioner of

(United States *v.* Simpson.)

the Revenue," to *James M'Dowell,* *Esq.* the Attorney of the *United States,* having the charge of this judgment.

TREASURY DEPARTMENT,
*Fifth Auditor's Office,*
*March* 31, 1825.

SIR.—I have received your letter of the 14th instant. As the indulgence already extended to Mr. *Patton* has been very liberal, I cannot consent to any change in the terms stipulated in my letter of the 22nd ultimo, for the liquidation of the debt due by him to the *United States,* viz. that on the first of November next, he shall pay three hundred dollars, with the interest that will be due on his bond up to that date, four hundred eighteen dollars, eighty-eight cents, and one hundred sixty-nine dollars thirty-four cents, for the addition of ten per cent. accruing on the amount of duties not bonded, making together the sum of eight hundred and eighty eight-dollars, twenty-seven cents to be deposited that day by him, and annually thereafter on the first day of November, pay three hundred dollars, with the interest due up to that date.

TREASURY DEPARTMENT,
*Fifth Auditor's Office,*
*February* 17, 1826.

SIR,—I have just received a joint letter of this date from the Hon. *John Findlay* and *John Brown,* requesting, for certain considerations therein stated, a further indulgence until the first of June next, to pay the first instalment of the debt due by him to the *U. States,* which was to have been paid on the first of November last. You will please to give this indulgence to Mr. *Patton,* and inform him it is given, in the full confidence, that he will at the expiration of the time be prompt in making the payment.

The admission of these letters in evidence was objected to, on the ground that neither the official character, nor hand-writing of *S. Plesenton* was proved. A witness was then sworn, who testified that he had done business for the *United States,* and had corresponded with *S. Plesenton* the Fifth Auditor of the Treasury, had remitted money to him and received his receipts; had never seen him writing his name, but had no doubt but that the signatures were his. The court over-ruled the objections to the evidence, and sealed a bill of exceptions at the request of the plaintiff. The negligence of the plaintiff, in suffering the lien of these judgments to be lost as against the estate of *Patton* the principal, and the indulgence given to him till he became insolvent, were relied upon by the defendant, in support of the issue on his part. In answer to several points put by plaintiff's counsel, the court instructed the jury in substance, that if they believed that *Simpson* was prejudiced by the negligence of the plaintiff and indulgence

given to *Patton,* they should find for the defendant; and the jury did so find.

*A. P. Wilson* and *Bell,* for plaintiff in error,

Contended; that hand-writing can be proved only by one who has seen the person writing. *Vickray* v. *S. Kelly,* 14 *Serg. & Rawle,* 372. *Bank* v. *Jacobs,* 1 *Penn. Rep.* 181.

That the *United States* is not subject to any rule of law which is based upon the negligence of a party, and that no negligence or expiration of lien can be applied to their prejudice: That there was nothing in the letters of *S. Plesenton* which would bind the *United States,* so as to prevent them from proceeding upon their judgment at any time, when they might have been requested so to do by *Simpson* the surety. Mere indulgence to the principal will not discharge a surety, unless it be in disobedience of an express request of the surety. On this point were cited *Cope* v. *Smith,* 8 *Serg. & Rawle,* 112. *Gardner* v. *Ferree,* 15 *Serg. & Rawle,* 30. *Commonwealth* v. *Shryock, ibid.* 70.

*Blanchard & Porter,* for defendant in error.

The letters of *S. Plesenton* changed the nature of the contract; and if so, the court will not stop to enquire, whether the surety was injured thereby or not. *Bogart* v. *Nevins,* 6 *Serg. & Rawle,* 371. *Baldwin* v. *King,* 5 *Johns. Chan.* 561. *Barry* v. *Mandell,* 10 *Johns. Rep.* 595. *Whart. Dig.* 713, *No.* 25, *Title Surety. Milliken* v. *Brown,* 1 *Rawle,* 398. If the faith of the *United States,* as pledged by the letters given in evidence, was kept, the surety was *ipso facto* discharged. There shall be no negotiation between the creditor and the principal, which results in the injury of the surety, unless he be discharged. *Commissioners* v. *Ross,* 3 *Bin.* 523. *Commonwealth* v. *Shryock,* 15 *Serg. & Rawle,* 71 *People* v. *Janson,* 7 *John Rep.* 340.

The opinon of the Court was delivered by

GIBSON, C. J.—The rule is well settled, that mere forbearance, however prejudicial to the surety. will not discharge him. It is his peculiar business to judge of the danger to be apprehended from delay, and to quicken the creditor, where the occasion requires it, in the way known to the law; in default of which, the loss incurred is necessarily to be attributed to his own supineness. Was there any thing beside forbearance here? A judgment is entered up on certain revenue bonds in 1819, on which there is no proceeding, but a still-born *fieri facias* till 1826, when the present *scire facias* is brought, and a general appearance entered for both defendants, one of whom (the principal) confesses judgment in person, on the 14th of August, in the same year. Previous to this, he has procured the assent of government, to an arrangement for payment of instalments; and on the 31st March, 1825, the Fifth

(United States v. Simpson.)

Auditor of the Treasury, acting as Commissioner of the Revenue, and being further importuned for indulgence, instructs the attorney of the *United States* to admit of no change in the terms, but is induced on the 17th February following, to protract the time for payment of the first instalment: and this is the ground of the supposed equity. Now though an extention of the credit beyond the time mentioned in the contract, will undoubtedly discharge the surety, it is well established that a consent to forbear which does not tie up the creditor's hands, will be attended with no such consequence, being in effect nothing more than forbearance in fact; and what was then to preclude the *United States* from proceeding at any moment here? The government made no agreement with any one, having merely acceded to an overture for indulgence on the score of humanity. Because the indulgence accorded was purely gratuitous; and even were the instructions of the Auditor evidence of a contract, it would be without consideration. It is said the confession of judgment by the principal, was the consideration. That, however, was not stipulated as a condition, and it did not take place till six months afterwards. We have then a bare case of forbearance, at the instance of the principal, which in *Todd* v. *Blair*, decided by this court at *Chambersburg*, in 1827, was held to give the surety no equity. That case has not been reported; but the facts were, that *Todd* was the bail of *Irwin*, in a recognizance to obtain the stay of execution allowed by law on a judgment obtained by *Blair;* who, to an application of *Irwin* for terms, answered thus: "I have spoken to Mr. *Lyon* (the attorney) not to urge the payment of the money now due me on the County docket by you and Mr. *Todd*, before the first of September next, I have money to pay myself at that time, and can not give any further indulgence. I mention this to you, as you spoke to me a few days ago, to wait ten days or two weeks on you, and that you would make the money up without any more cost, which is certainly my wish." And this being by sufferance, and consequently *nudum pactum*, was held not to release the bail. Such then being the law of the case, it was error to submit to the jury, as an inquiry material to the merits, whether the jury had been prejudiced by the actual or supposed expiration of the creditor's lien on the land of the principal, or by any other consequence of the creditor's naked quiescence. In the *Commissioners of Berks* v. *Ross*, 3 *Binney*, 520, the surety was not discharged, though the creditor had waived his demand of special bail, in consequence of which the principal was enabled to flee to another state. That a loss from indulgence, which is purely permissive, will discharge a surety, is unsupported by authority, and in contradiction of the most obvious principles of justice; such a loss being fairly attributable to the surety's own negligence, in omitting to warn the creditor to

(United Sates *v.* Simpson.)

proceed; without which he may not know that a loss is impending. Actual detriment is not the criterion, or a material ingredient. If the creditor has disabled himself, the surety is *ipso facto* discharged: if he has not, no eventual loss from mere delay, will produce that effect. In the case, therefore, as it appeared on the evidence, there was nothing to submit; and where the pretentions of a surety are put in contrast to a claim of the public, for whom no sympathy is ever felt, it is indispensable to justice, that the jury be held strictly to the law and the evidence.

The objection to the admission of the letters is not sustained. The signature of the auditor was proved by one who had become familiar with it in a long correspondence with him; in addition to which the letters had been produced by the attorney of the *United States,* to whom they were addressed, and we see no reason to doubt of the propriety of their admission.

Judgment reversed and a *venire de novo* awarded.