INTERNATIONAL HARVESTER COMPANY OF AMERICA *v.*
LAYTON.

## Opinion delivered April 4, 1921.

1. APPEAL AND ERROR—ABSENCE OF MOTION FOR NEW TRIAL.—In an action against two defendants, in which judgment was rendered for plaintiff against one defendant and in favor of the other defendant, where plaintiff appealed from the adverse judgment against him and the losing defendant cross-appealed, the judgment against the latter will be affirmed in the absence of a motion for new trial by the cross-appellant; the errors complained of not appearing of record.

2. APPEAL AND ERROR—CONCLUSIVENESS OF VERDICT.—A general finding of the trial court, sitting as a jury, in favor of the defendant, will be sustained if there is any substantial evidence to sustain any of the grounds of defense set up in the answer.

3. PARTNERSHIP — RELEASE OF PARTNER — EVIDENCE.—In an action against partners for a balance alleged to be due on an account, evidence *held* to sustain a finding that plaintiff released one of the partners from liability on dissolution of the partnership.

4. PARTNERSHIP—RELEASE OF PARTNER.—Where a creditor of a partnership, with knowledge that the partnership had been dissolved, made a settlement with one of the partners and accepted his notes in full payment, the other partner was released.

5. APPEAL AND ERROR—CONCLUSIVENESS OF COURT'S FINDING.—Even though a finding of a trial court sitting as a jury is against the decided preponderance of the evidence, it is not the province of the Supreme Court on appeal to determine where the preponderance of the evidence lies, as this court must give the evidence its strongest probative force in favor of the court's finding.

Appeal from Marion Circuit Court; *J. M. Shinn,* Judge; affirmed.

*J. C. Floyd,* for appellant.

1.    The court erred in refusing to enter judgment against Ernest Layton or J. B. Melton & Company for the sum claimed. Layton held himself out as a partner to Powell, and is liable as a partner so far as creditors are concerned. 2 Ark. 346; 99 *Id.* 602; 139 S. W. 544; 32 Ark. 733; 87 *Id.* 123; 5 *Id.* 61; 2 *Id.* 34; 93 *Id.* 301; 80 *Id.* 33. This case does not fall within the rule in 29 Ark. 512; 24 *Id.* 12; 23 *Id.* 411. See 20 L. R. A. 595 and note.

2. Partners are liable jointly and severally for the firm debts.    4 Ark. 164; 37 Am. Dec. 777; 21 Ark. 186; 21 *Id.* 411.

Appellees can not avoid the contracts signed by the firm by reason of the alleged misundertsanding as to their character. They were perfectly plain and unambiguous. If not read, they had the right to do so, and should have done so, as they had the opportunity.    6 R. C. L. 624, note 20. If the contracts are void for an alleged mistake, acceptance of the goods and appropriation of them raised an agreement to pay for them.    6 R. C. L. 989, § 357. A retiring partner remains liable for all existing debts of the firm unless the creditors consent to the retirement and agree to look to the other members of the firm for payment.    20 R. C. L. 981, § 215; 30 Cyc. 612; 117 Ala. 611; 92 Ga. 350; 63 Kan. 453.    See, also, 9 L. R. A. (N. S.) 77; 114 Ala. 536; 19 Mont. 200; 37 L. R. A. 515; 61 Am. St. Rep. 498; 47 Pac. 995-6; 62 Neb. 478; 84 N. Y. Supt. 934; 47 W. Va. 201; 24 S. E. 991.

Mere knowledge upon part of the creditor of the dissolution of the firm and of the changed relation is not enough.    67 Mo. App. 45; 30 Ohio C. C. 389; 27 Am. Rep. 464; 8 Watts 485; 47 W. Va. 201; 34 S. E. 991.

Mere notice by a retiring partner after dissolution that the continuing one would pay the debts does not release him in the absence of an agreement by the creditor. 9 L. R. A. (N. S.) 79; 73 Ill. App. 266; 29 Mich. 332.

Appellant is not estopped, as no release was given, and there is no evidence to sustain the plea of estoppel. It was error to refuse to enter judgment against Ernest Layton, a member of the firm.

*Williams & Seawel,* for appellee, Ernest Layton.

The finding in favor of Ernest Layton was general, in a law case, and the finding is as conclusive as the verdict of a jury, as the evidence is legally sufficient to sustain it.    56 Ark. 621; 53 *Id.* 161; 136 *Id.* 3; 132 *Id.* 45. No declarations of law were asked or made and the presumption is that the court correctly applied the law to

the facts. 111 Ark. 190; 55 *Id.* 329; 112 *Id.* 47. Appellant's motion for a new trial presents only the question of the sufficiency of the evidence, and it is sufficient. 101 N. W. 776; 30 Cyc. 472. The findings and judgment are amply supported by the evidence.

Appellant is estopped as against Ernest Layton. 64 Ark. 627; 99 *Id.* 260; 131 *Id.* 77.

*J. H. Black,* for cross-appellant, J. B. Melton.

There was a settlement between appellant and cross-appellant upon an account stated in which appellant was paid in full. Appellant accepted the benefits of said settlement and is estopped from repudiating it, and the notes given by J. B. Melton are outstanding. Appellant at no time offered to place J. B. Melton *in statu quo.* Appellant could not accept the benefits of the settlement with notice of the facts and afterward not be estopped from repudiating it. 50 Ark. 458; 78 *Id.* 603; 88 *Id.* 363; 10 R. C. L., par. 22; 93 Ark. 252; 98 *Id.* 269. It was error to render judgment against cross-appellant.

WOOD. J. This action was brought by the appellant, International Harvester Company, a corporation of Wisconsin, authorized to do and doing business in this State, against appellees J. B. Melton & Co., a partnership, composed of J. B. Melton and Ernest Layton. The complaint alleged that the appellees entered into certain written contracts with appellant to purchase wagons, trucks and other farm machinery and supplies upon the terms and conditions of the contracts, which were made exhibits to the complaint. Appellant alleged that there was a balance due it on account under these contracts of $1,-329.99, for which it asked judgment.

Melton and Layton filed separate answers, in which they set up the same defenses. They admitted that they were partners doing business at Yellville, Arkansas, under the firm name of J. B. Melton & Company. They alleged that the business of the firm was buying and selling dry goods and groceries. They denied that the firm as

such was dealing in farming implements, wagons, and hardware, and alleged that neither member of the firm was authorized to enter into a contract with the appellant for that purpose, and denied that they executed the contracts which form the basis of the account set forth in the complaint.    They set up that the contract entered into with appellant was an agency contract, under the terms of which they were to sell wagons, trucks, farming implements and supplies upon a commission basis.    They alleged that they were not indebted to appellant in any sum on the account.    They further set up that on the 27th day of May, 1916, the partnership was dissolved, Melton taking over and continuing the business with appellant; that the appellant was notified of such dissolution, and it released the appellee Layton from any liability on the contract and turned over all of its property of every character in the hands of the former partnership to Melton, and made arrangements with him to continue the agency business and accepted his notes in settlement of all amounts, then due.    Layton alleged that the account sued on was created after the dissolution of the partnership, and after he had been released by the appellant, and that the appellant was estopped by its conduct from asserting any claim against him.    Melton alleged that the appellant, after the dissolution of the partnership, accepted the individual notes of J. B. Melton in settlement of the balance of the partnership indebtedness, and that he had since fully liquidated all the indebtedness due by him to the appellant.

The contracts, which were exhibits to the complaint, were identified and introduced in evidence.    They are signed J. B. Melton & Co. by J. B. Melton, and by appellant through W. W. Nelson, General Manager.    There was testimony on behalf of the appellant tending to prove that the contracts were entered into as alleged in the complaint; that the appellee Layton authorized Melton to enter into the contracts for the firm and that the orders and net sales contracts, out of which the alleged indebtedness evidenced by the account was incurred, were signed

J. B. Melton & Co., by J. B. Melton. There was testimony on behalf of the appellee Layton tending to prove that he did not authorize Melton to enter into the contracts as alleged and to sign the name of the firm to such contracts; that the contract that he authorized Melton to sign was merely a contract by which J. B. Melton & Co. was to sell appellant's wagons, trucks, farming implements and supplies as agents, on a 15 per cent. commission.

By consent of all parties, the cause was submitted to the court sitting as a jury, and the court found that Melton was justly indebted to the appellant in the sum claimed in its complaint, and also found that the appellee Layton was not liable to the appellant in any sum. The court thereupon entered a judgment in favor of the appellant against Melton for the amount claimed and also in favor of the appellee Layton against the appellant for costs. The appellant filed its motion for a new trial against appellee Layton, which was overruled, and appellant duly prosecutes this appeal. The record as abstracted does not show that Melton filed any motion for a new trial in the court below. After the lodging of the transcript Melton took a cross-appeal in this court.

1. The judgment in favor of the appellant against Melton must be affirmed for the reason that it does not appear from this record that he moved for a new trial. The errors of which he here complains should have been called to the attention of the trial court in a motion for a new trial. On an appeal taken in a law case, where the errors complained of do not appear from the record and there is no motion for a new trial, there is nothing before this court for its determination. See *Gardner* v. *Miller,* 21 Ark. 398; *Hamilton* v. *State,* 62 Ark. 543, and other cases cited in 1 Crawford's Digest, Appeal and Error, 179, sec. 116 (D), "Motion For a New Trial."

2. There was a general finding in favor of the appellee Layton. Therefore, if there is any substantial evidence to sustain any of the grounds of defense set up in his answer, the verdict of the trial court sitting as a jury

will be sustained. *Dixon & Co.* v. *Scroggins,* 136 Ark. 33; *Mueller* v. *Coffman,* 132 Ark. 45. One of the defenses of appellee Layton was that, after his partnership with Melton was dissolved, the business of J. B. Melton & Company with the appellant was settled, by mutual consent, and said business was turned over to Melton, and appellee Layton was released by the appellant from all liability to it on account of said business.

Conceding that the undisputed testimony proved that the contracts were entered into by the appellant with Melton and Layton, as partners under the firm name of J. B. Melton & Company, yet it also proves that this partnership was by mutual consent dissolved. J. B. Melton testified concerning the settlement with appellant after the dissolution of the partnership in part as follows: The wagons arrived after appellee Layton had retired from the firm. Shortly thereafter, Harry Hill, who was a traveling salesman for the appellant, was in Yellville, and while the wagons were still at the station witness talked with him about the dissolution of the firm and told him that Layton was out, and that witness was not able to handle the wagons, and that he was going to another town. Hill told witness to pay the wagons out and do the best he could with them. Witness paid the freight and took them out. Hill told witness that they did not want to ship the wagons back. Witness had the conversation with Hill while the firm of J. B. Melton & Co. was taking inventory and selling out to one Mr. Nanny.

Layton testified that Hill, a representative of the appellant, was present while they were taking the inventory and knew that his firm was closing out. Hill asked witness if they were fixing to sell out and witness told him that they were—they were taking an inventory then. Hill said to witness that Melton would continue the line and that he would not consider witness in it in any way whatever—that witness would be out of it; that he would turn the business over to Melton. Witness asked Hill about the commission on some stuff they had sold and about $140 freight, and Hill told witness to settle with Mr.

Melton on that, and it would be satisfactory. Witness replied, "All right," and Hill, without any solicitation, told witness that he could consider himself out. Witness relied on that, and didn't have anything further to do with the company. The firm of J. B. Melton & Co. was dissolved in May, and no demand was made on witness for the debt in controversy until the 28th of the following December.

Nanny testified that he bought out the firm of J. B. Melton & Company, and that while they were taking the inventory Hill tried to get him to form a partnership with Melton for the purpose of handling the business of appellant. Witness talked over the business of appellant with Hill and told him that he didn't want any partner. Hill told witness that Ernest Layton wanted it, but he was not going to let Ernest have it and preferred that witness and Melton have it as partners. Hill told witness that he was going to let Melton have it.

W. B. Crabb, who was in the employ of the appellant as "block-man," was sent to Yellville in the fall for the purpose of making a settlement with J. B. Melton & Co. for the goods that they had purchased of appellant during the year 1916. He testified that the settlement was made with Melton, who informed witness that there had been a dissolution of the firm, and that Layton had no further connection with it. Witness made the settlement as far as he could make it, but told Melton that the company would not accept a settlement from him as final without the signature of the company. The bookkeeper had already made out and delivered to them a stated account. Witness added to it some credits, and all the charges were made out at the office by the bookkeeper from the books of the appellant. The testimony of Crabb further shows that the settlement called for the signing of certain notes; that these notes were signed by Melton. He told Melton that the best he could do would be to effect the settlement and to send it in to the company for its approval; that witness was sure that they would not accept it, as they did not; that witness had no authority

to accept it for the company. Witness took six notes in making the settlement stated. Witness took the notes in payment of the account. Witness was asked if in making the settlement with Melton he was making it with him individually, and answered, "Yes, but he was treating it as the company's business." He knew at the time that Layton and Melton were claiming that the partnership had been dissolved, and that Melton was claiming that the wagons and the agency had been turned over to him individually, and that Layton had nothing further to do with it. There was considerable more testimony of this witness to the same effect, which it is unnecessary to set out in detail.

Melton was recalled and further testified that the account that was rendered to him and which he signed was made out against J. B. Melton; that the characters "& Co." were not on the account stated at the time same was rendered to him. In regard to the statements of Crabb, he testified that he told him that the best he could do would be to give him what money he had and his notes. Crabb replied that was all right. Witness gave him his check for $250 and witness' notes for the balance. Witness denied that Crabb said at the time that the settlement would have to be subject to the approval of the general manager. Witness understood from the fact that Crabb had the account of the company and from his conversation that he had authority to settle the matter. Witness understood when he executed the notes that it was done in settlement of the matter: Crabb did not ask witness to sign the company's name to the settlement.

There was further testimony tending to prove that the appellant cashed the individual check of J. B. Melton and forwarded the notes to its collection department, which in turn sent them to the Bank of Yellville for collection and allowed them to remain there until after one of them was past due without making any demand upon Layton for the payment of these notes.

We have reached the conclusion that the court was warranted in finding from the above testimony that the

appellant had released the appellee Layton from all liability under the contracts made with J. B. Melton & Company. The above testimony was legally sufficient to warrant a finding that the appellant had knowledge of the fact that the partnership between J. B. Melton and Ernest Layton had been dissolved, and that the appellant made a settlement with Melton and accepted his individual notes in payment of the balance due on the contracts between appellant and the firm of J. B. Melton & Co., and thereby released the appellee Layton. Even though such finding of the court were against the decided preponderance of the evidence, it is not our province on appeal to determine where the preponderance lies. Under the often announced rule of this court, we must give the evidence its strongest probative force in favor of the court's finding. *Gossett* v. *Gossett,* 112 Ark. 47.

It follows that the judgment of the court is correct, and it must be affirmed. It is so ordered.