## LE GAULT v. LEWIS-ZIMMERMAN
(No. 1031; Decided May 2, 1922; 206 Pac. 157)

</div>

Partnership—Dissolution of Partnership Agreement—Action for Accounting.

1. In action for dissolution of partnership and for an accounting in which defendant denied that plaintiff had an interest in the business, evidence *held* to prove that any partnership contract existing between the parties was rescinded by mutual consent, and that plaintiff for a good consideration surrendered his interest in the business to defendant.

2. In action for dissolution of partnership and for an accounting, defended on the ground that plaintiff had no

interest in the alleged partnership business, testimony
that third party, who had agreed to sell the property to
plaintiff and defendant, thereafter executed a bill of sale
to defendant alone, *held* admissible to show plaintiff was
without interest in the business under Uniform Partner-
ship Act, § 36, subd. 2 (Comp. St. 1920, § 4207).

APPEAL from the District Court, Park County, PERCY W.
METZ, Judge.

Action by George A. Le Gault against P. R. Lewis-Zim-
merman for dissolution of partnership, appointment of re-
ceiver and for an accounting. There was a judgment of
dismissal and plaintiff appeals.

*R. L. Donley*, and *Ernest Goppert*, for appellant.

The court erred in over ruling the objection of the plain-
tiff to the testimony of defendant as to defendant's belief
based upon plaintiff's alleged conduct, that he, plaintiff,
had abandoned the partnership; the testimony was merely
an expression of opinion and in direct evidence of facts.
(Abbott's Proof of Facts, 3rd Ed., 3. Jacksonville Co. v.
Woodworth, 26 Fla. 368.) The court erred in receiving evi-
dence of newspaper notices published of plaintiff's inten-
tion to leave Meeteetse, and of defendant's testimony of
ownership. (Hite v. Stimmell, 45 Kan. 469; Simpson v.
Smith, 27 Kan. 565.) The court erred in finding that no
partnership had been formed, which finding was contrary
to the evidence. Persons who have agreed to become part-
ners and have acted accordingly will be held to be partners
although differing in their interpretation of the agreement.
(22 A. & E. 15.) Failure to contribute agreed sums to
partnership capital will not avoid the creation of a partner-
ship. (Company v. Haas, 33 N. W. 657.) Once formed a
partnership continues until dissolved. (20 R. C. L. 811.)
He who claims abandonment of property rights assumes the
burden of proving the same. The reviewing court will ex-
amine the entire record and render such decree as should
have been rendered. (Pyeatt v. Estus, 179 Pac. 42; Schock
v. Fish, 45 Okla. 12; 144 Pac. 584; 3 C. J. 260; Wollenberg

v. Minard, 37 Ore. 621; Adams v. Smith, 11 Wyo. 200; 70 Pac. 1043; Schiller v. Blyth & Fargo Co., 15 Wyo. 304.)

*Brome & Hyde,* for respondent.

This is an action for dissolution, accounting and for appointment of a receiver to wind up an alleged partnership business. There is no controverted question of law in the case. Considering the plans urged in the brief of appellant on the subject of partnership, we assume that it is conceded by appellant that one who has not contributed anything in the way of money or labor or any other thing of value to the capital of the partnership may abandon the enterprise, and having done so, will not thereafter be permitted to assert the existence of a relation which he himself has terminated. (Denver v. Roane, 99 U. S. 355; Blake v. Sweating, 121 Ill. 67; Ligare v. Peacock, 109 Ill. 94.) The general principle of law governing the formation and dissolution of partnerships does not seem to have been modified nor abrogated by the uniform partnership act of 1917. The evidence is insufficient to show the creation of a partnership in the first instance, and clearly shows that if there ever was a partnership it was terminated by the plaintiff in surrendering his interest thereon and informing persons who testified at the trial that he did not care to have any interest in the drug store. The evidence shows that plaintiff had no interest. The findings of the trial court are supported by the evidence and should be sustained.

KIMBALL, Justice.

The plaintiff (appellant), claiming to be a partner with defendant (respondent) in a drug business, brought this action for dissolution of the partnership, appointment of a receiver, and accounting. Whether the plaintiff had an interest in the business seems to have been the sole issue at the trial. Upon a general finding in favor of the defendant, judgment dismissing the action was entered, and the plaintiff appeals. The principal specification of error

is that the judgment is against and contrary to the law and the evidence.

In August, 1917, the Meeteetse Drug Company, the owner of a stock of drugs at Meeteetse, Wyoming, agreed with plaintiff upon the price to be paid for said stock of which the plaintiff then took possession. The defendant was the owner of a stock of similar merchandise located at Manderson. Desiring to consolidate the two businesses, it was agreed that the defendant's stock be removed from Manderson to Meeteetse, to be combined with the other. The stock originally at Meeteetse was transferred by written contract from the Meeteetse Drug Company to plaintiff and defendant who jointly assumed liability to pay therefor. No part of the purchase price was paid at the time, but was to be paid in installments due quarterly. There was no written contract of partnership between plaintiff and defendant, and the evidence of the verbal contract under which the business was launched was contradictory and very unsatisfactory. The two stocks were put together and business thereafter conducted at Meeteetse under the name "Pioneer Pharmacy." It was agreed that defendant should manage the business at a fixed salary, and that plaintiff would contribute to it no time or service. The foregoing facts were not disputed.

The plaintiff, claiming to be an equal partner, asserts that his obligations to the partnership were discharged when he paid some expenses of moving defendant's drug stock from Manderson to Meeteetse, and surrendered possession of the Meeteetse drug stock upon which he had paid nothing. However, his own testimony, as we read it, does not exclude the inference that he promised to pay to defendant an amount equal to one-half his agreed salary as manager. This he did not do.

The defendant testified that plaintiff agreed to contribute capital equivalent to one-half the value of the Manderson drug stock, and to assist in meeting the payments on the stock purchased jointly by them; that the amount so to be contributed was not definitely fixed, and that when asked

to sign a partnership agreement specifying their respective investments, the plaintiff said that that would be done later. Finally, about March 1, 1918, defendant claims he asked the plaintiff if he was going to put any money into the business, and plaintiff replied: "No, I don't want anything to do with it; the store is yours," and as a reason for not "signing up," stated that he didn't want to be tied up at Meeteetse—didn't know how long he would stay. Defendant contends that after this conversation the business was conducted by him upon his sole responsibility and for his sole benefit.

O. B. Mann, one of the persons composing the Meeteetse Drug Company, who acted as agent for that company, testified that in the spring of 1918, while talking to plaintiff about the payments under the sale contract, plaintiff said, "I don't care to have any interest in the drug store; I don't care to have anything to do with it." There was no attempt to show that to this time the business had been profitable. The contrary might be inferred, for it appears that on February 15, 1918, to meet a payment of $300 due to the Meeteetse Drug Company under said contract, it was necessary to borrow the money from the bank upon the joint note of plaintiff and defendant. All payments under that contract, both before and after March, 1918, including the note to the bank, were made without any assistance from plaintiff, or were assumed by defendant as his sole and individual indebtedness, with the consent of the creditor company.

On behalf of the plaintiff there was evidence introduced for the purpose of showing that defendant recognized him as a partner after March, 1918. We do not deem it necessary to describe the acts and statements put in evidence for this purpose. They were either denied or explained by defendant, and we see no reason why the finding upon the facts by the trial court should have been influenced by them.

The court was justified in finding from the evidence either that the plaintiff promised to contribute to the busi-

ness funds equal to the value of the Manderson stock, or
that, pending a definite understanding as to the amount
of his contribution, he withheld his consent to a partner-
ship contract.   The evidence justified the further finding
that in the spring of 1918, having failed to contribute his
part of the capital, or having refused to agree as to what
that contribution should be, the plaintiff announced that
he wanted nothing to do with the business; that it belonged
to defendant.   This announcement was no doubt considered
either as an offer to surrender whatever interest he had in
the business if he were discharged from the obligations
which he had assumed, or simply as a refusal to enter into
the partnership relation.   We think it was clearly under-
stood that the defendant accepted the offer, or acquiesced
in the situation, and that any contract theretofore existing
was discharged by mutual consent.   If it be conceded that
a partnership relation did exist between the parties, it was
not only dissolved by mutual consent, but plaintiff for a
good consideration surrendered his interest in the stock and
business to the defendant.   It is clear, therefore, that the·
judgment dismissing the action was supported by the evi-
dence, and was not contrary to law.

The other specifications of error relate to the admission
of evidence, and will require only brief notice.   Defendant
was permitted to testify that in December, 1919, after he
had reduced the indebtedness to Meeteetse Drug Company
from about $3440 to $1650, O. B. Mann accepted his per-
sonal obligation for the amount remaining unpaid, and
issued to him a bill of sale.   The manifest purpose of this
testimony was to show that plaintiff was discharged from
a possible or apparent liability upon the contract with the
Meeteetse Drug Company.   Plaintiff's objection to the testi-
mony was upon the ground that the Meeteetse Drug Com-
pany could not again sell the property as it had long be-
fore parted with its title by the sale to plaintiff and de-
fendant jointly.   We think this objection was not well
taken, for, if the transaction described was not effectual as
a sale, it did tend to prove a course of dealing between the

Meeteetse Drug Company, as creditor, and defendant, as a person continuing the business, from which an agreement might have been inferred for the discharge of the plaintiff from liability upon the original contract of sale. (See Paragraph (2) § 36, Uniform Partnership Act, § 4207, Wyo. C. S. 1920.) Its competency and materiality for this purpose was not challenged by the objection.

The other evidence mentioned in the specifications of error need not be noticed in detail. We think all of it might have been excluded without affecting the result, and therefore the plaintiff was not prejudiced by its admission.

We find no error in the record, and the judgment is affirmed.

*Affirmed.*

POTTER, Ch. J., and BLUME, J., concur.