[No. 2951, Jan. 21, 1927]

MICHELIN TIRE CO. v. AKERS et al.

[255 Pac. 388]

### SYLLABUS BY THE COURT

1. Failure of a creditor to answer a communication from the retiring member of a debtor partnership notifying the creditor of dissolution and of assumption of partnership indebtedness by the continuing partner, and claiming release from all liability to the creditor, does not constitute consent by implication, nor effect a release.

2. Attempts by the creditor to collect his debt from the continuing partner, who has assumed payment thereof, and the receipt from him of checks in payment, do not constitute dealings with the continuing partner as though the debt were his alone.

3. Assuming, but not deciding, that mere notice to the creditor of the dissolution of the debtor partnership, and of the assumption of the firm debts by the continuing partner, is sufficient, as between the creditor and the retiring partner, to change the latter's status to that of a surety, a mere forbearance of the creditor to press collection will not release the retiring partner's liability, though in the meantime, the situation may have so changed that he cannot enforce indemnity against the continuing partner.

[1] 30 Cyc p. 616 n. 90. [2] 30 Cyc p. 616 n. 90 [3] 20 Cyc p. 612 n. 54.

Appeal from District Court, De Baca County; Hatch, Judge.

Action by the Michelin Tire Company against T. G. Akers and W. K. Jones, partners, doing business under the trade-name of the Yeso Trading Company, and such defendants individually. From a judgment against defendant Akers, but in favor of defendant W. K. Jones, plaintiff appeals. Reversed and remanded, with direction.

J. F. Kelton, of Ft. Sumner, for appellant.

Keith W. Edwards, of Ft. Sumner, for appellees.

OPINION OF THE COURT

WATSON, J. T. G. Akers and W. K. Jones were sued upon an indebtedness incurred while they were doing business as copartners. The partnership had been dissolved, and Akers had assumed its liabilities. The judgment was against Akers, but in favor of Jones; the court's conclusion of law being "that the plaintiff at least impliedly released W. K. Jones, and is estopped to hold the defendant, W. K. Jones, for such indebtedness, and cannot now recover from him." The plaintiff, Michelin Tire Company, appeals.

The bill of exceptions having been stricken (Michelin Tire Co. v. Akers, 30 N. M. 338, 233 P. 1005), the only question for our consideration is whether the court's findings support the above-quoted conclusion and the judgment based thereon.

[1] It appears from the findings that Akers and Jones, copartners doing business under the name of Yeso Trading Company, became indebted to appellant in the sum of $552.23. A few months later the partnership dissolved; Akers purchasing appellee's interest, and assuming and agreeing to pay appellant's account. Appellee promptly "notified the plaintiff (appellant) of the terms and conditions of said sale, and notified the plaintiff that he would be no longer responsible for any part of the indebtedness owed by the Yeso Trading Company, and particularly would

not be responsible for the indebtedness sued upon by the plaintiff in this action." About a month later Akers paid one-half of the indebtedness and about four months later gave his check for the balance. This check, however, was dishonored, and the balance has never been paid.

The third and fourth findings are as follows:

"(3)    The court further finds that upon the receipt of said notice the plaintiff did not notify the defendant, W. K. Jones, that he would not be released from said obligation; that while the testimony introduced on behalf of the plaintiff is to the effect that plaintiff's agent wrote the defendant W. K. Jones that he would not be released from said indebtedness, yet the evidence does not show that the letter was mailed to the defendant at Yeso, N. M., and said defendant positively testifies that no such notice was received by him. Therefore the court finds that he did not receive such notice, and that he had no notice that his proposition to the plaintiff was not accepted. Although the evidence positively discloses that plaintiff had agents in the town of Yeso at different times subsequent to the dissolution of said partnership and prior to the filing of the suit herein, and although several months elapsed between said time, said agents or the plaintiff never notified the defendant W. K. Jones that he was being held under said partnership contract, and the first notice he had of the plaintiff's claim against him and that they did not assent to his proposition was the filing of the suit herein.

"(4)    The court further finds that, after the receipt of the notice from the defendant W. K. Jones that he was no longer a member of said partnership, plaintiff dealt with the defendant T. G. Akers as though said obligation were the obligation of the defendant T. G. Akers alone, and accepted a check from him, under date of September 10, 1922, for the balance due on said account, but which check the court finds was not honored or paid by the defendant T. G. Akers."

By the fifth, sixth and seventh findings it appears that, when appellant received notice of the dissolution, Akers had sufficient property, so that if appellant had moved promptly for the collection of its debt, the same could have been collected; but that, before it commenced suit, Akers had disposed of his property, and had not sufficient property in De Baca county to pay the indebtedness, nor to indemnify appellee in case he should pay it; and that, if now compelled to pay,

appellee would suffer loss "occasioned solely by the conduct of the plaintiff in not notifying him that his proposition was not accepted, and in permitting the defendant T. G. Akers to dispose of the partnership property and of his individual property without collecting said indebtedness; that the plaintiff should not be allowed at this time to hold the said W. K. Jones for such indebtedness, in view of its own fault and wrong in the premises."

Upon such findings the conclusion of law set forth at the outset is based.

Appellee's counsel states his position thus:

"The contention of counsel for appellee is not that the defendant W. K. Jones would be released from liability on an indebtedness which was due and payable when he retired merely because the creditor did not at once sue and collect the same. There is another element in this case, which brings it within the rule followed by the lower court. The goods consigned to the partnership, for payment of which the suit below was filed, were still on hand and unsold when defendant W. K. Jones retired and notified plaintiff of his arrangement with his partner T. G. Akers, and that he would no longer be responsible for the payment of said consignment of goods. In view of this fact, it is the contention of counsel, and was the theory of the lower court, that, if plaintiff wished to permit the remaining partner to keep the consignment and sell off the goods, thus benefiting plaintiff as well as the remaining partner, then it was bound to look to the remaining partner solely for payment."

This is, indeed, a harsh doctrine. The creditor having sold and delivered his goods, on being notified of dissolution of the partnership, and that the indebtedness had been assumed by the continuing partner, must either demand return of the goods or lose the liability of the withdrawing partner. Either alternative means loss to the creditor. It means, in effect, that the indebted partnership, by dissolving, may cancel the contract of sale and force the seller to accept a return of the goods. Certainly debtors cannot, in such manner, repudiate their contracts.

Mission Fixture Co. v. Potter, 26 Cal. App. 601, 148 P. 223, is relied upon by appellee to support his

theory. We do not consider it in point. That case
did not involve the relation of debtor and creditor.
Goods had been consigned to the partnership to be
used as samples from which orders might be taken.
A bailment resulted. The contract provided for re-
turn of the goods on the bailor's demand. The bailee
partnership was dissolved; one partner purchasing the
other's interest and continuing the business under the
same name. Notice of these facts was given to the
bailor. The principle of the decision is merely that
the bailor, by permitting the bailment to continue
when he might have ended it at any time, estopped
himself from claiming any liability as against the re-
tiring partner for conversion of the goods, after the
dissolution, by the continuing partner. This case
clearly does not support appellee's theory, nor is there
any authority cited to support the proposition that,
by virtue of the notice given, appellee was released
from all liability. We cannot sustain the judgment on
this theory.

· [3] It is urged further, in support of the judgment,
that the notice was effective at least to change the
appellee's status from that of joint debtor to one of
surety; and that, by its conduct, appellant released, or
estopped itself from relying on, appellee's liability as
surety.

There is a sharp conflict of authority as to whether
a notice of dissolution and of assumption of indebted-
ness by the continuing partner is sufficient, in the ab-
sence of express consent and of consideration, to
change the status of the retiring partner, in relation
to the creditor, from that of debtor to that of a surety.
20 R. C. L., "Partnership," § 223; case note, "As-
sumption of Debts on Dissolution of Partnership," 9
L. R. A. (N. S.) 49; continued, 48 L. R. A. (N. S.) 547;
case note, "Relation of Retiring Partner as Surety
upon Dissolution of Partnership," 1 Ann Cas. 725;
continued, 11 Ann. Cas. 1028. We shall assume, how-
ever, for the purposes of this appeal, that such is the
effect of mere notice. To sustain the judgment, how-

ever, it must additionally appear that the conduct of
appellant was such as should result in the release of
appellee's liability as a surety. The conduct relied
on is this: (1) Failure to bring home to appellee notice
of a refusal to release him. (2) Continued dealing
with the assuming partner as though the obligation
were his alone. (This, so far as the findings disclose,
consisted merely in accepting from the continuing
partner a check for the unpaid balance of the debt,
which check was dishonored. It may be that the
court here had in mind, also, appellant's failure to
reclaim the goods). (3) Permitting the continuing
partner to deal with his property, without filing suit
or endeavoring to collect the indebtedness, until he
had disposed of it, and had not sufficient property in
De Baca county to satisfy the indebtedness; by reason
of which negligence, continuing for "several months,"
the situation so changed that, when sued, appellee's
recourse on his former partner for indemnity was value-
less. These are the equities which appellee urges in
his favor, as sufficient to discharge him from liability
as a surety.

[2] In the first place, we cannot attach such im-
portance, as counsel does, nor as the district court
seems to have done, to appellant's failure to notify
appellee that he was not released. Appellee did not
apparently request any answer or seek appellant's con-
sent to a release. He blandly informed his creditor
that he was no longer bound by the contract. He did
not state that he deemed himself henceforth a mere
surety. He advanced the legal proposition that, by
arranging with another to assume his liability, and
notifying his creditor thereof, he had accomplished his
discharge. Of course, he was mistaken as to his
rights. If appellant had replied, disputing the right
it would have been a mere legal contention. We know
of no duty resting upon appellant to correct appellee's
mistake of law. Appellant had notice of the facts.
The relationship resulting did not depend upon the
understanding, or misunderstanding, of either party
concerning a question of law. It seems to us that, if

appellee was lulled into a sense of security, it was by his own mistake as to his legal rights. Understanding and claiming, then, that he had effected his own release, how can he now urge that he supposed appellant had released him?

We do not understand that the receiving of a check, dispatched by the continuing partner for the unpaid balance, is significant. Whatever the relationship between the parties, Akers was under a duty to pay, and it was appellant's right and duty to receive payment from him. Indeed, it is of appellant's failure to press collection from Akers that appellee principally complains. It does not constitute a dealing with Akers as though the debt had been his sole obligation. In this transaction we see no irregularity, no admission, nor anything prejudicial to appellee. We have already suggested that failure to reclaim the particular goods was not, as in the case of a bailment it would be, a dealing with Akers as though the obligation were his alone. Appellant clearly was under no duty to reclaim the goods, and, so far as the finding shows, had no right to do so.

The question remains, then, whether a creditor by mere delay in enforcing collection by suit during several months, effects the release of a surety who, because of the delay, has suffered through the dissipation or removal of his principal's property. This is not a case of extension of time. In such a case the surety, through the act of the creditor, is placed in a different position. He can no longer pay the debt at any time and look to his principal and his principal's property for indemnity. So an extension of time releases him. But mere delay in enforcing collection is a different matter. Appellee at all times had the right—indeed, could have been compelled—to pay the debt. He, like appellant, sat by until it was impossible to collect from Akers, no doubt enjoying a false sense of security, but as we have concluded because of his own misconception, rather than because of any act or assurance of appellant.

We have examined all cases cited by appellee, and find none to support a contention that mere delay may be relied upon by a surety as effecting his release. An extension of time will do it. Refusal by the creditor to proceed to collect when the surety demands that he do so may do it. But mere forbearance will not. In Brandt on Suretyship and Guaranty, § 376, it is laid down:

"It is also settled, as a general rule, that the mere passive delay of the creditor in proceeding against the principal, however long continued and however injurious it may be to the surety, will not discharge the surety. In such case the contract is not changed and the surety may at any time pay the debt and proceed against the principal. Such forbearance by the creditor, even if continued until the debt is barred as against the principal by the statute of limitations, or if continued for twenty-four years, does not discharge the surety."

In Campbell v. Floyd, 153 Pa. 84, 25 A. 1033, one of the cases cited by appellee, it is said:

"Assuming then, the relation of this appellant to have become that of surety, what is there in the facts alleged to discharge him? Mere forbearance, however prejudicial to the surety, will not release him. U. S. v. Simpson, 3 Pen. & W. 437 [24 Am. Dec. 331]; nor will indulgence, accompanied by payment of interest by the debtor and a promise of punctuality in the future, have that effect, if the creditor's hands are not tied. Johnston v. Thompson, 4 Watts, 446. And while a surety may be discharged by an agreement between the creditor and the principal debtor for an extension of the time of payment, the essential elements of a contract must be present; not only must the agreement be upon a sufficient consideration, but the time of payment must be definitely fixed; otherwise the surety will not be discharged."

Much other authority might be cited to this proposition.

As we view these findings, the judgment is based either on a failure to distinguish between a bailment and a debt or upon the proposition that, by mere forbearance, a surety may be released. We find it necessary, therefore, to reverse the judgment and to remand it to the district court, with direction to enter judgment for the appellant, and it is so ordered.

PARKER, C. J., and BICKLEY, J., concur.