John J. WHITE, Jr., Appellant

v.

William A. BROWN, Appellee.

No. 15642.

United States Court of Appeals District of Columbia Circuit.

Argued Oct. 26, 1960.

Decided April 20, 1961.

Petition for Rehearing Denied May 18, 1961.

Mr. Eugene L. Stewart, Washington, D. C., for appellant.

Mr. Edward L. Genn, Washington, D. C., with whom Mr. Harry Saidman, Washington, D. C., was on the brief, for appellee.

Before WILBUR K. MILLER, Chief Judge, and FAHY and WASHINGTON, Circuit Judges.

FAHY, Circuit Judge.

The question we have to decide is whether or to what extent a partner who retires from a partnership, as did appellant White, under an agreement with two continuing partners that the latter would be responsible for the partnership debts and indemnify him, was released in the circumstances to be stated from an indebtedness of the partnership to appellee Brown. The indebtedness grew out of professional services rendered by appellee, a consulting engineer, to the partnership, a firm of architects. The amount due for the services, with some adjustments arising out of other accounts between appellee and the partnership, was $20,659.27, for which appellee obtained judgment in the District Court. The case was tried before a jury.

It appeared that the partnership had been dissolved in January 1957 and that appellee was notified of this in April of that year. There was evidence from which it could be found that appellee was advised by appellant of his agreement with the continuing partners as above set forth, and that appellee in September 1957 accepted a series of twelve promissory notes executed by the continuing partners, one of the series payable each month in the principal sum of $2,000 with interest at six per cent. The promisors failed to pay any of these notes and became insolvent within less than a year after the dissolution agreement. There was also evidence that at a meeting of creditors in April 1958 appellant was notified that he would be held responsible.

The above appearing to be undisputed, the District Court, at the conclusion of appellant's case, directed a verdict in appellee's favor in the principal sum of $20,659.27, with interest.

Appellant contends that the court erred on the grounds that (1) a principal-surety relation arose between the continuing partners and himself by reason of the

indemnity agreement, and the appellee by his conduct discharged appellant, the surety, from obligation to him; and (2) appellee also discharged appellant by accepting the liability of the continuing partners in lieu of that of the original partnership.

We consider first the latter contention. The conduct relied upon by appellant consisted of continued dealings by appellee with the remaining partners while knowing they had assumed the obligation of the old firm, billing them for the indebtedness, and taking their notes therefor.

Reliance is placed by appellant upon Regester v. Dodge, C.C.E.D.N.Y.1881, 6 F. 6, an old and impressive case, having to do as does the instant one with the obligation to a creditor of a partner who, with knowledge of the creditor, had retired from a partnership when it was indebted to the creditor. On the facts, which more clearly than those before us showed an intention of the creditor to look solely to the remaining partners, it was held he had discharged the retired partner. The court said that the liability of the latter continues "unless facts be shown from which an intention on the part of the creditor to accept the liability of the new firm in lieu of the liability of the old firm can be fairly inferred." 6 F. at page 9. The court said:

"In disposing of questions of this character, courts have frequently held that, when the dissolution of an old firm has occurred, and a new firm has agreed to assume the liabilities of the old firm, but slight circumstances are required to justify finding an intention on the part of a creditor of the old firm, who has notice of the dissolution and of the agreement by the new firm, to accept the liability of the new firm in place of the liability of the old. * * * 'Very slight evidence, indeed, would be required to establish that the creditor had taken the liability of the new firm instead of the old.'" 6 F. at pages 9–10.

While the indemnity agreement could not in itself alter the rights of creditors, yet, whether or not the creditor is a party to the agreement, it constitutes a promise made for his benefit and one of which he as at liberty to take advantage. Byvesky v. Agins, 1924, 100 N.J.L. 75, 125 A. 574. If appellee assented to the arrangement and adopted the remaining partners as his debtors, then the liability of appellant is at an end. Appellant was discharged from his liability if there was an agreement to that effect between himself, the remaining partners and appellee; and such agreement may be inferred from the course of dealing between the remaining partners and the creditor who has knowledge of the dissolution agreement. See Dunbar v. Steiert, 1927, 31 Ariz. 403, 253 P. 1113; International Harvester Co. of America v. Layton, 1921, 148 Ark. 156, 229 S.W. 22; LeGault v. Lewis-Zimmerman, 1922, 28 Wyo. 474, 206 P. 157; Lindley on Partnership 316–18, 323–26 (11th ed. 1950), and cases there cited; Uniform Partnership Act § 36(2).

We do not adopt the "slight evidence" criterion set out in Regester v. Dodge, supra, which is not generally approved, see 6 Williston, Contracts § 1875, at 5264 (Rev.ed.1938), but that aside there is enough evidence in this case to go to the jury on the issue of discharge by agreement. The evidence tends to show more than a continued dealing by the appellee with the remaining partners. That alone is not enough. Tuckerman v. Mearns, 49 App.D.C. 153, 262 F. 607. But we do not find the Tuckerman case or others cited by appellee, Wadhams v. Page, 1890, 1 Wash. 420, 25 P. 462 and Michelin Tire Co. v. Akers, 1927, 32 N.M. 234, 255 P. 388, 52 A.L.R. 494, to bear sufficient factual similarity to the case at bar to militate against the position we take. Appellee not only continued for some time to deal with the new partnership with respect to the matters now in suit but also took the notes of the remaining partners, construable as extending for a definite period the time for payment of the indebted-

ness. And there was evidence that appellee acted with knowledge of appellant's withdrawal and the assumption of the debt by the remaining partners. That this conduct continued over a relatively brief period of time is a factor to be considered. But the gist of the matter is that the evidence was sufficient to be submitted to the jury for its determination whether an agreement to discharge appellant's liability should be inferred.

We come to appellant's further contention that he became a surety for the indebtedness to appellee, and that the latter's conduct brought about appellant's discharge from his obligation as surety.

■ Where a partner withdraws from a partnership under an agreement with his former partners who continue the business that they assume the partnership obligations and will indemnify him, and notice of these arrangements is given a creditor, who acquiesces in the situation, the rule derived from a majority of the decisions appears to be that the withdrawing partner becomes a surety for the payment of the obligation. This occurs by operation of law, that is, by equitable implication, rather than by express agreement between the creditor and the withdrawing partner.

In Mearns v. Chatard, this court said:

"The authorities bearing upon this question may be arranged under two categories. The first holds that the retiring partner continues liable unless *expressly* released by the creditor; and the second, that he becomes a surety for the payment of the debt by his former associates, and is absolved from all responsibility in connection with it by any act of the creditor which would ordinarily release a surety. The cases in the first category are illustrated by the following statement in an elaborate note to Dean v. Collins, 9 L.R.A.(N.S.) 77: 'A retiring partner is not discharged from liability to a firm creditor, therefore, by any agreement between partners for the payment of the debts of the firm by one or more of them, unless the creditor has assented thereto, and agreed to look to the other members of the firm for payment of his debt.' And those in the second category are exemplified by this excerpt from the same note: "The rule, apparently based upon Oakeley v. Pasheller, 4 Clark & F. 207, 7 Eng.Reprint, 80, 10 Bligh, N.R. 548, 6 Eng.Reprint, 202, and which seems to be sustained by the weight of authority in England, and which is sustained by authorities entitled to high respect in America, and which seems to be there growing in favor, is that, when a firm is dissolved, and one of the partners takes the assets and assumes the liabilities, the other partner thereafter occupies the position of a surety, not only as between the partners themselves, but as to all others who have had dealings with the firm to whom notice of the new contract has been brought." [1]

■■ We adopt the rule which appears to have the support of the weight of authority, with a qualification now to be noted. A compensated surety is not discharged by an extension by the creditor of a definite period of time for payment, except to the extent that the surety is harmed by the extension. Chapman v. Hoage, 296 U.S. 526, 56 S.Ct. 333, 80 L.Ed. 370, Restatement, Security § 129 (1941). We think appellant's position is analogous to that of a compensated surety. Before he retired and when the indebtedness was incurred, appellant was personally liable, jointly and severally with his partners. On his retirement he could not fairly be said to have acquired the status of a gratuitous surety, that is, one who obligingly lends his credit to another; so to consider the matter would be to disregard entirely the fact that before his retirement the partnership relation had imposed upon appellant a primary obligation. If he were in the position of a gratuitous surety he would be released by a definite extension of time by the creditor for payment, granted

1. 47 App.D.C. 257, 262–263.

to the principals without his consent, if supported by a consideration. Prejudice need not be shown. But appellant is not in a like position. His suretyship status, as we have said, arises by implication only and under equitable principles. Equity, therefore, should follow his status and permit his discharge as surety only to the extent he is harmed by the conduct claimed to bring about such discharge.[2]

On his defense of release first above considered appellant conceded no prejudice, taking the position, we think correctly, that prejudice need not be shown as a condition to that defense. But this concession was not made with respect to his defense of discharge as a surety. In view of the rule we now adopt based on the suretyship relation appellant should be given an opportunity to prove the extent, if any, of prejudice. Otherwise stated on this branch of the case the jury would be entitled to consider on the evidence whether or not the giving of the notes, in terms for value received, was intended to and did constitute a definite extension of time for the payment of the original indebtedness, and, if so, the court should also instruct the jury that this would release the retired partner from obligation to the appellee to the extent, if any, that appellant could show he was prejudiced by the extension.

Reversed and remanded for further proceedings not inconsistent with this opinion.

WASHINGTON, Circuit Judge (dissenting).

I would hold the appellant liable on his obligation, and affirm the judgment of the District Court.

I.

The principal issue here is—who shall bear the risk of the insolvency of the continuing partners? Upon entering a partnership, each partner impliedly assumes the risk of the insolvency of all of the others. The mere act of withdrawing from the partnership in no way alters this responsibility, as regards obligations incurred during the period of active partnership of the retired partner. A creditor who relied upon the credit of the firm during that time may recover in full from the retired partner, leaving the latter without effective recourse by way of contribution if the continuing partners have become insolvent.

An indemnity agreement does not change this situation.[1] It merely enhances the potential recovery of the retired partner; instead of contributorship, under which he has a right to make the remaining partners pay their shares, it provides a right to require the continuing partners to pay his (the retiring partner's) share as well. It affects merely the amount potentially recoverable; it does not protect him in the event that, because of their insolvency, nothing is actually recoverable from the continuing partners.

The creditor's right to recover in full against any of the partners is a valuable right. Presumably businessmen select the partnership form, with the automatic incident of unlimited personal liability, at least partly in order to confer upon creditors this right as an inducement to dealing with them. It is clear that it is beyond the power of any partner, active or retired, unilaterally to extinguish this right. When a partner retires, and secures indemnity rights against the firm,

---

2. Cf. Note, 10 Colum.L.Rev. 550 (1910).

1. Although an indemnity agreement cannot limit the rights of creditors, it may have the effect of enhancing their rights, as Byvesky v. Agins, 1924, 100 N.J.L. 75, 125 A. 574, cited by the majority, demonstrates. That was a suit upon a joint obligation against a continuing partner.

Defendant asserted that the joint character of the obligation made the retired partner's presence essential to the litigation. Plaintiff interposed the indemnity agreement, under which defendant had agreed to accept an individual liability, and the defense was overruled.

the mere giving of notice to a creditor can in no way diminish the latter's rights.

Of course the creditor may himself agree to release the retired partner from his partnership obligation. Where there is no express release, however, ambiguous acts should not give rise to a presumed relinquishment of valuable rights. Where a creditor has notice that a partner has retired, and that the remaining partners have agreed to assume his partnership obligations, the reasonable course for the creditor is to look to the partnership for payment in the first instance. And where the partnership is not then able to meet its obligations, it seems no less businesslike for the creditor to negotiate an extension in the time for payment with the firm.

It is from this that the possibility of prejudice to the retired partner arises. For, since he no longer has any voice in the business decisions which may be taken by the firm, he has a strong interest in preventing material alterations in obligations under which he may become liable. Where a gratuitous surety's liability is involved, prejudice is, in effect, conclusively presumed from an agreement between creditor and principal extending the time of the obligation. Appellant urges that a retired partner be given the same favorable treatment. The equities of the two are, however, not really comparable. A gratuitous surety is one who, having no liability, agrees, without compensation, to accept a circumscribed liability. But a retired partner initially has a primary and unlimited liability. In a sense, a surety undertakes another's debt, upon given conditions; but the liability of a retired partner is for his own obligation, and is undertaken unconditionally. While a novation between creditor and principal may presumably work injury on the surety, it need not necessarily do so; yet out of a scrupulous regard for the interests of non-compensated sureties the courts have fashioned a rule excusing proof of prejudice where the effect of the novation is material. I see no reason for extending the benefits of this view to a retired partner seeking to avoid liability on his own obligation.

In a proper case, no doubt, estoppel may bar an action against a retired partner, upon a sufficient showing of prejudice. But here, defendant-appellant neither alleged nor attempted to prove prejudice, relying solely upon the theory that prejudice conclusively follows from the acceptance of notes. I think the court should decline to accept that theory, and that the decision below should be affirmed.

## II.

Turning to the views expressed by the majority, I have these comments:

(a) Under the "release" theory, the majority opinion would allow the jury to deprive appellee of his claim upon a showing that he looked to the remaining partners for payment, billed them, and took notes from them. Normally a creditor who looks initially for payment to one of a number of joint obligors does not, because of that, forfeit his rights against the others. The rule advanced in the opinion seems to operate as an exception to this general proposition. In my view, there are no valid reasons, grounded upon the needs of business and the peculiar nature of the partnership form of organization, for such an anomaly. A valuable right—such as the one here at issue—does not normally become extinguished unless its holder chooses to bargain it away, for consideration, or unless his dilatoriness in enforcing it raises such dangers of prejudice to the obligor as to call into play the doctrines of laches or estoppel. The mere *intent* to look, in the first instance, to another, does not normally have such consequences. (The conduct of a retired partner, as I read the majority opinion, is given evidentiary importance in that it may permit such an intent to be inferred; it does not supply an independent ground for the release.) If such an intent is to be rendered fatal to a creditor's claim, a premium is put on testimony asserting or denying intent—a treacherous subject at best. And since the normal business practice appears to be that

a creditor looks for payment first to the continuing business, saving the retired partner's liability as an object of last resort, the creditor will usually be put at a disadvantage when he finally turns for payment to that partner.

The case of Regester v. Dodge, C.C.E. D.N.Y.1881, 6 F. 6, is relied upon as a source of the rule which the majority adopts. While that case does contain language which would seem to make the intention of the creditor determinative of his rights, I deem it significant that the court there also found sufficient evidence of actual prejudice to the retired partner to support the defense of laches as an alternative holding. The opinion in Regester recites that when the new partnership subsequently went into bankruptcy, "and the plaintiff [creditor] was called on to act in respect to the debt sued on, it was open to him at once to assert the liability of Edward Dodge [the retired partner] for the debt in question. Had he then done so, and had the liability of Edward Dodge been then established, a right on the part of Edward Dodge to become a creditor of the new firm in the bankruptcy proceedings would have arisen. This was a substantial right lost to Edward Dodge by unexcused delay [of some five years] on the part of the plaintiff." 6 F. at pages 14–15. The case is further distinguishable in that by the time the action was brought, eight years after the obligation had been incurred and six years after Dodge—the retired partner—had left the firm, Dodge was dead.

I think that a far different case is presented where the creditor assents to the substitution of the liability of some new person or persons not previously liable to him. In that situation, the introduction of the new obligation constitutes consideration for the discharge of the retired partner. This was the classic English rule, see Wadhams v. Page, 1890, 1 Wash. 420, 25 P. 462, and it is, I submit, the governing principle in Dunbar v. Steiert, 1927, 31 Ariz. 403, 253 P. 1113, cited by the majority.[2] In the case at bar the creditor initially secured the liability of three persons, the members of the old partnership. Appellant argues, in effect, that since the remaining two-man partnership is a new entity, the substitution of its liability for the liability of the old partnership is sufficient consideration to support his release. But this can hardly be so since the new entity, if it is such, was created by the subtraction of an obligor, and not by the addition of one.

2. In Dunbar, defendant, having agreed to purchase a garage from plaintiff, entered into a partnership with Miller. The partnership was then dissolved, and Miller agreed to undertake defendant's liability, plaintiff assenting. In affirming a judgment for defendant, the court said, 253 P. at page 1114: "The essence of the new contract was the substitution of Miller for [defendant] as the debtor. Miller agreed to such substitution, [defendant] agreed to it, and [plaintiff] also consented, and, in consideration thereof, released [defendant]." Gillett v. Ivory, 1912, 173 Mich. 444, 139 N.W. 53, is to the same effect.

International Harvester Co. of America v. Layton, 1921, 148 Ark. 156, 229 S.W. 22, also cited by the majority, does support the release of a retired partner without consideration. However, there the creditor's agent, knowing that defendant was about to retire from the firm, "without any solicitation, told [defendant] that he could consider himself out. [Defendant] relied on that and did not have anything further to do with the company." 229 S.W. at page 24. There is no evidence in the case at bar of an express waiver of this kind.

Le Gault v. Lewis-Zimmerman, 1922, 28 Wyo. 474, 206 P. 157, was not a suit to enforce the liability of a retired partner; it was an action for the dissolution of a partnership in which the sole question was whether the plaintiff was, as he asserted, a partner of the defendant. The defendant offered to prove that if plaintiff had ever been a partner, he had retired. To this end he introduced evidence that a creditor of the partnership had continued to deal solely with defendant, and that plaintiff, being thereby released from the partnership obligations, had received consideration for surrendering his partnership interest. While the court held the evidence admissible, it does not appear from the opinion that plaintiff in any way challenged the legal theory supporting his discharge from the obligation in question.

It seems to me that the release theory advanced in the opinion operates in derogation of the general principles governing the enforceability of obligations, because it cuts off an otherwise valid claim without proof of consideration or prejudice; that it is not a well settled principle of partnership law; and that, absent strong policy reasons arising from the needs of the business community, it ought not be adopted.

(b) The opinion also advances a "suretyship" theory under which the defendant may be discharged if he can prove that he has been prejudiced by the change in the terms of the obligation negotiated by the continuing partners. This differs from the release theory in two particulars: (1) it adds the requirement of prejudice, although it confines it to prejudice arising from the change in the terms of the obligation; and (2) it assumes that the continuing partners have agreed to indemnify defendant, and that this is known to plaintiff. I believe that prejudice ought to release defendant, not because he is deemed to be in the position of a compensated surety, but because prejudice attributable to the conduct of plaintiff is always material to the enforceability of a claim. That prejudice should be of any kind, and should not be limited by concepts borrowed from suretyship law.

The majority would remand to permit defendant-appellant to make proof of prejudice or detriment. Appellant made no claim of detriment below. Appellant's counsel there stated that under his theory of waiver and suretyship no detriment need be claimed. This is certainly true, but I am not persuaded that justice requires that the case be remanded to give appellant another chance simply because the erroneous theory under which he proceeded led him to omit necessary proof. In this connection, it is worth noting that appellant conceded at the trial that estoppel would require proof of detriment, but disclaimed any intention of proceeding upon an estoppel theory.

III.

The majority has, by this decision, offered the jury a choice of two theories upon which to permit the defendant-appellant to escape his partnership obligations. In my view, nothing in the law, as applied to the facts here before us, warrants such a result.